CASE 92—PETITION ORDINARY—SEPTEMBER 25.

# Ashland Coal & Iron Railway Company v. Wallace.

### APPEAL FROM BOYD CIRCUIT COURT.

1. MASTER AND SERVANT—MINE OWNERS—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.—It is the duty of a mine owner to exercise ordinary care to provide a reasonably safe place in which his employe may perform his work, and he must use diligence to

Ashland Coal & Iron Railway Company v. Wallace.

keep this place in a reasonably safe condition, and the diligence must be commensurate with the character of the services required and with the dangers a prudent man would apprehend under the circumstances of each particular case, and is liable for any injury resulting from a failure to exercise such care; and it is the duty of the employe to exercise that degree of care which is commensurate with the character of his occupation, and that a reasonably prudent person would use under like circumstances to protect himself from injury.

2. SAME.—The master must inspect the entrances to the mine in which the servant is engaged at work, and the servant has a right to presume, unless it was a part of his duty to inspect and keep in good condition the roof of the entrance, when directed to work in a particular place that the master had performed this duty and proceed with his work relying upon this presumption, unless a reasonably prudent and intelligent man under like circumstances would be able to discern risks, which defects in the mine indicate; and in order to charge the servant with contributory negligence, the dangers and not the defects alone must be so obvious that a reasonably prudent man would have avoided them.

3. NEGLIGENCE—PRACTICE.—Negligence is the absence of care according to the circumstances of each case, and is always a question for the jury when there is a reasonable doubt as to the facts or as to the inferences to be drawn from them.

4. PRACTICE IN CIVIL CASES—JURY TRIAL—INSTRUCTIONS.—While it would be better practice to give to the jury in the instructions all the law at the time the case was finally given to them, it was not prejudicial error to instruct them several days after the case had been finally submitted to them, that less than the whole number might make a verdict.

5. MINES AND MINING—STATUTORY CONSTRUCTION.—The provisions of section 2732 of the Kentucky Statutes imposing a fine upon any person employed in a mine who neglects or refuses to securely prop the roof of any working place under his control, or neglects or refuses to obey any order given by the superintendent of the mine, in relation to the security of that part of the bank where he is at work, was specially intended to refer to those persons actually engaged as miners in taking out coal and thereby removing the natural props of the roof, and has no application to persons who are specially employed to perform duties which have no connection with the weakening or removal of these natural supports.

JOHN F. HAGAR for appellant.

1. Where employes in a mine have notice of danger attendant upon doing work at a particular place, and have investigated and conferred among themselves and conclude that it is safe, they are acting upon their own judgment, and can not recover from the master in event of injury. Bunt v. Sierra Buttes Gold Mining Co., 24 Fed. Rept., 848.

2. If the defendant alone can avoid the accident by the use of due care, and does not, the plaintiff may recover; if the plaintiff alone can avoid it and does not, he can not recover; if both can avoid it neither can recover; if neither can avoid it the general rule applies and the plaintiff can recover. K. C. R. R. Co. v. Thomas Adm'r., 79 Ky., 160; I. C. R. R. Co. v. Dick, 91 Ky., 434; P. & M. R. R. Co. v. Hoehl, 12 Bush, 41; Ramsay v. Railway Co., 89 Ky., 99.

3. The court should have given the instruction asked by the appellant telling the jury, that if they believed the injury was caused by the negligence of Maybury, and that the plaintiff and Maybury were each employed by the defendant and were engaging at the time of the injury in the same kind of work, and that the defendant did not authorize Maybury to command the plaintiff to work at the place at which he sustained the injury they should find for the defendant. Volz v. C. & O. R. R. Co., 15 Ky. Law Rept., 727.

STONE & SUDDUTH on same side.

1. The entrance to the mine constituted the working place of Wallace when injured and it was his duty under the statute (section 2732) to look after his own safety so far as the props and supports of the mine were concerned; and therefore the instruction telling the jury that it was the duty of the appellant not only to furnish appellee a safe place in which to work but to employ a competent and skillful man, whose duty it was to look after the safety of the roof of the entries, was erroneous. Victor Coal Mining Co. v. Muir, 38 Pac Rept., 378; Coal Company v. Estivenard, 40 N. E. Rept., 726.

2. The plaintiff alleged gross negligence as his ground for recovery, and was not entitled to recover on any other ground. Volz v. C. & O. R. R. Co., 15 Ky. Law Rept., 727; L. & N. R. R. Co. v. Bransley, 96 Ky., 310.

3. The compensatory damages should have been limited to the compensation for the plaintiff's decreased power to earn money, and the jury should not have been permitted, as they may well

·Ashland Coal & Iron Railway Company v. Wallace.

have supposed that they were, to fix some speculative value to compensate him not to exceed $30,000. K. C. R. R. Co. v. Gastineaus Adm'r., 83 Ky., 119; L. C. & L. R. R. Co. v. Case Adm'r., 9 Bush, 736; L. & N. R. R. Co. v. Berry's Adm'x., 96 Ky., 604.

PROCTOR K. MALIN for appellee.

1. It is the duty of the master to use ordinary care to provide a safe place in which his employe may work, and to frequently inspect it to see it is kept in such condition. Tierney v. M. & N. R. R. Co., 33 U. S., 311; Brown v. C. R. I. & P. R. R. Co., 53 Iowa, 595; 76 Mich., 179.

2. The servant has a right to assume that the master has performed his duty and is not required to inspect the place where he works before entering upon the performance of his work. L. & N. R. R. Co. v. Foley, 94 Ky., 220; Cook v. St. Paul & Manitoba Railway, 34 Minn., 45.

3. If the master tells his servant to work in a dangerous place without providing for his protection, he is liable for any injury resulting therefrom although the plaintiff's fellow servant contributed to produce the injurious result. Bruswell on Negligence, sec. 201, Amer. & Eng. Enc. of Law, vol. 14, p. 806; Collier v. Wilson, 21 Ill. App., 141.

4. Where there is evidence upon which the jury may find a verdict for the plaintiff it is not in the province of the court to take the case from the jury and decide it as a matter of law. Bruswell on Negligence, sec. 94.

5. It devolved upon the defendant to provide a reasonably safe place for the plaintiff to work, and the defendant being a corporation could only perform that duty through an agent, and if it failed to have a competent agent to look after the safety of its mine it was guilty of gross negligence. Northern Pacific R. R. Co. v. Hurbert, 116 U. S., 642; Vandussen v. Latellia, 78 Mich., 492.

J. A. SCOTT on same side

1. It is the duty of the master to provide the servant a reasonably safe place in which to work. Shearman & Redfield on Negligence, 4th Ed. sec. 190, 194; Bailey on Master & Servant, p. 2, 3, 35.

2. The servant has a right to rely upon the judgment of the master as to the safety of the rooms and materials. Bogenschutz v. Smith, 8 Ky. Law Rept., 380; Doyle v. Swift Iron & Steel Works, 5 Ky. Law Rept., 59.

3. The fact that the party injured was guilty of contributory negli-

gence will not prevent a recovery if his fellow workman or one superior in authority could have prevented the injury by the exercise of ordinary care. Empire Coal Mining Co. v. McIntosh, 82 Ky., 554; Whitehouse Coal Mining Co. v. Cochran, 13 Ky. Law Rep., 636.

4. The fact that the statute makes it a misdemeanor for a miner to fail to prop his working place, has no application in this case, because the appellee Wallace was not a miner but a tracklayer and had nothing to do with the condition of the roof.

5. The duty of the master to provide a reasonably safe place for his servant to work can not be delegated to another so as to exonerate the master from liability. Fuller v. Todd, 80 N. Y., 46; Bailey on Masters' Liability, p. 131, 132.

RUFUS S. DINKLE of counsel on same side.

STONE & SUDDUTH and JOHN F. HAGAR in petition for rehearing.

1. The statute in this State makes it the duty of any one working in a mine to look after the safety of his working place, (Ky. Stat., sec. 2732), and the duty imposed by the statute is not alone upon the miner who may be at work in one of the rooms of the mine, but upon all or any persons engaged at work in any part of the mine in any capacity. Coal Co. v. Estevenard, 40 N. E. Rept., 725; Victor Coal Co. v. Muir, 38 Pac. Rept., 378.

JUDGE BURNAM delivered the opinion of the court.

Grant Wallace instituted this suit against appellant to recover damages, the petition alleging that while in the employ of appellant, in its mines at Rush, Ky., he was knocked down by slate which fell from the roof of the mines and received injuries from which he finally died, and which he says were caused by the gross negligence and carelessness of appellant in allowing the mine to become unsafe and dangerous from overhanging slate, which had become loose and liable to fall; that this was known to appellant in time for it to have prevented the injury to him by the exercise of

ordinary care, or that it could have been known to it, but that these facts could not have been known to plaintiff in time to prevent the injury.

The answer of appellant traversed the allegations of the petition, and alleges that appellee was a tracklayer in defendant's mines in charge of its tracklaying; that at the time of the injury complained of he was in the mine by his own voluntary act and remained there without the knowledge of the defendant or of its officers or its agents; that at the time he received the injury he was engaged in laying a track along the entry; that he was a miner of experience and familiar with the mining entry in which he was at work, and knew that such work is attended with danger on account of coal or slate falling from the roof of the entry; that he contributed to his own injury by his failure to exercise due and ordinary care and pru 'ence at the time a: d before receiving the injury sued for, and that but for this negligence and failure to exercise ordinary care and prudence the injuries complained of could not and would not have befallen him.

The reply makes a traverse of the affirmative matter in the answer.

Upon the issues so made a trial was had, resulting in a verdict and judgment thereupon in favor of plaintiff for the sum of $5,000. For failure of the court to set aside the verdict and grant it a new trial upon motion and grounds filed in support thereof, the appellant, the defendant in the court below, prosecutes this appeal. Pending the appeal, appellee Wallace died, and the action stands revived in this court in the name of his administrator.

The facts in the case about which there seems to be no dispute are these: Grant Wallace, an experienced miner, had been in the employ of the appellant for a number of years, and for about seven months before the injury he had been employed by the appellant as its chief railroad track-layer in the mine in which he was injured; that on the morning on which he was injured he, Joseph Maybury, Robert Collins and James Sexton went into the mine for the purpose of putting in a switch at the intersection of two entries, to run around the corner of the intersection; that they had been working between a half an hour and an hour when the slate from the roof fell upon decedent and crushed him, the appellee at the time of the falling of the slate being engaged in driving a spike in a tie which was being held at the other end by Joseph Maybury. The evidence shows that on Saturday, before Wallace was injured, the corner was turned to the cross-entry and coal to the quantity of about a ton and a half was taken from the rib side of the entry, in order that the track might be turned and laid, by one Harris. The latter says he was directed to take the coal away from that corner by Maybury the morning before; that he took out a couple of carloads of slate that would have fallen, and that when he got through work he made a report to Schugh, the foreman of the mine; that he had had no talk with the foreman before he did the work, but that Maybury notified him that he was instructed by the foreman to tell him to do the work; that he thought he left the roof in a safe condition. He said he had been for eight years a practical miner.

The testimony of the foreman, William Schugh, as to

how this track came to be laid at that time is that on Thurs-
day before the Sunday on which the accident occurred he met
Grant Wallace in one of the entries, and that Wallace said
to him that the "switch at the mouth of Davis ought to be
laid;" that he responded, "Yes, it ought to be;" that Wallace
replied: "Suppose you let us lay it Sunday;" that he (the
foreman) replied, "I would rather you would do it Saturday
night, but you may go ahead and do it Sunday if it suits you
better.   Who can you get to help you?"   That he responded
"Bob Collins and Jim Sexton; and I think we can get Joe
Maybury."   Continuing, Schugh testifies: "The following
day I saw Wallace and asked him if he had seen them.
He said 'yes,' and that they had all agreed to lay the switch
on Sunday.   Wallace was the head roadlayer and had charge
of the work.   I did not direct Maybury to attend or assist in
the tracklaying in any way.   My orders to Wallace always
were, when I sent him to lay a piece of track anywhere in
the mine, to first examine the roof under which he was to
work."

Wallace, on the other hand, testifies that on Thursday be-
fore the accident Maybury, who was a boss in the mine, sent
for him to have the switch made, and notified him to go on
Sunday and put it down; and that he spoke to the other
men to accompany him, pursuant to Maybury's directions
as boss.   He testifies that he had nothing to do with keep-
ing the roof of the entry in repair; that his sole duty was
to attend to the laying of the track; that as soon as he ar-
rived at the cross-entry he proceeded to tear up the road;
that after they began to tear up the road Maybury, the boss,
sounded the slate in the roof and said it was perfectly
safe but that he would put a wedge in after they got

through laying the track and see if he could pull it down.. He also testifies that the slate which fell was from the corner which had been taken out by Harris, and that he took with him into the mine that morning his little son, who was present and playing around at the time of the accident. Wallace testifies that he did not himself sound the slate in the roof and relied entirely upon what Maybury said.

Robert Collins testifies that he was the assistant road-layer at the time and Grant Wallace was the roadlayer; that Joe Maybury was boss and gave orders what to do; that he was sent into the entry by Maybury to lay the switch, about 600 yards from the entry; that when they got to the place where they were going to work Maybury sounded the roof and said, "Boys, this is perfectly safe, but after we get the switch laid we will drive a wedge and try to pull it down," and that about an hour afterward the slate fell and crippled Wallace.

Maybury, however, testifies that at the time of the accident he was in charge of the ventilating of the mine; that Wallace asked him if he would help put in that switch and that he agreed to do so at Wallace's request; that Wallace was the roadlayer in charge of the work; that after they got into the mine and arrived at the place where they were to work they examined the roof and pronounced it safe; that it was sounded by Sexton, Wallace and himself; that at the time the slate fell he was on one side holding a tie for Wallace to spike, about a foot and a half from him; that there was nothing to indicate that the roof was not safe; that at the time his duties were on the ventilation of the mine in putting up doors; that Wallace had been working in that mine

for ten or twelve years; that at the time he was not the bank boss and gave no orders, although he carried messages from Schugh, who was the foreman.

James Sexton, the fourth man who was present on the occasion, testifies that Wallace was head roadlayer and that he was assisting Wallace; that when they arrived at the place where the work was to be performed Wallace sounded the place first and said, "What about this?" that Maybury and himself then got up and sounded it and Maybury said, "I am not afraid of it;" that he did not feel afraid, and that they all went to work. He testified that on Friday Wallace asked him to help him lay this switch and that at Wallace's request he got Maybury to help, and that they were all close enough together, to hear the sounding of the roof.

It does not appear from the testimony that decedent was employed to perform any duties other than that of laying the railway tracks in appellant's mines. He testifies himself that he was employed by the day, at one dollar a day; that his sole duty was to put down these railway tracks where directed, and that it was no part of his duty to inspect or keep in condition the roof of the entries.

A good many witnesses, whose testimony is very conflicting, were examined on the trial of the case to show that custom made it a part of the duties of the tracklayer to see after the overhanging roof of the entries, this being decedent's particular place of work. The evidence as to the good condition of this roof at the time, and at the point where the accident occurred, is also a matter of dispute in the testimony. Harris, the miner who moved the coal pre-

paratory to laying the track, says he left it in good condition; but Fugit, who was a miner of experience, testifies that in the afternoon of the day preceding the accident he saw the corner of the entry after it had been rounded off and the coal taken away; that he stopped and looked at the slate; that it was broken and some had fallen, and that, in his judgment, it was dangerous. He could see water running out between the rock and slate, and says that taking away the coal at the corner affected the safety of the place, and that he would not have worked under it; that this place could have been made safe by timbering it up, and that he spoke to Hoskins, who did the timbering, about 3 o'clock in the afternoon of the day preceding the accident and called his attention to a piece a little further up the entry than that which fell.

This testimony tends to the conclusion that the dangerous condition of the roof at the time and place where the accident occurred could have been known to appellant or its agents in charge of this mine by the exercise of diligence.

There is no evidence in the record that any inspection was made of this place by the foreman or managers of the mine to see whether it was safe or not after the removal of the coal by Harris, before sending decedent and his associates to lay the track on Sunday morning.

The question presented by the testimony in this case is whether the injuries resulting in the death of Wallace were caused by the negligence of the defendant company, or whether they were the result of the negligence of the deceased in failing to take proper care to protect himself from the ordinary risks attending the performance of his duties;

Ashland Coal & Iron Railway Company v. Wallace.

and if proper regard is to be had to the well recognized line of demarkation between the duties of a court as the expounder of the law and those of the jury as the triers of fact, it was proper that this question should have been submitted to the determination of the jury.

Negligence is absence of care, according to the circumstances, and is always a question for the jury when there is a reasonable doubt as to the facts or as to the inferences to be drawn from them. When the facts are either admitted or established by undisputed testimony, it is the duty of the court to declare the law applicable to them; but when material facts are disputed or inferences of fact are to be drawn from the testimony it is the exclusive province of the jury to determine what they are. (Field on Negligence, section 519; McGill v. Railway Co., 152, Pa., 334; Wilson v. Penna. R. R. Co., 177 P. S. R.)

It is the duty of the mine owner to exercise ordinary care to provide a reasonably safe place in which his employe may perform his work, and he must use diligence to keep this place in a reasonably safe condition so that the servant may not be exposed to unnecessary risk; and this diligence must be commensurate with the character of the service required and with the dangers that a reasonably prudent man would apprehend under circumstnces of each particular case. A greater degree of care is required of the master who places his servant at work in a coal mine, beneath overhanging masses of rock which are liable to fall at any moment, than one who places his servant where such danger is not to be apprehended. A prudent man would exercise greater care and watchfulness in the former that in the

latter case; and the greater the danger a prudent man would apprehend the higher the degree of care and diligence are required of the master in the protection of the servant.    For a failure to exercise this care, resulting in an injury to the servant, the master is liable, and this duty and liability extend not only to the unreasonable and unnecessary risks that are known to the master, but also to such as a reasonably prudent man in the exercise of ordinary diligence— diligence proportionate to the risk—would have known or discovered.    (Cook v. Railway Co., 34 Minn., 45; 24 N. W. Rep., 113; Noyes v. Smith, 28 Vt., 59; Gibson v. R. R. Co., 46 Mo., 163; Jones v. L. & N. R. R. Co., 95 Ky., 576; Flahiff v. L. & N. R. R. Co., 9 Ky. Law Rep., 398; Lawrence v. Hagemeyer, 93 Ky., 591; Union Pacific R. R. Co. v. Turvi, 53 F. R.,—.)

"And whilst the employer can not be held bound as an insurer of the safety of the place in which he puts his servant, he is, in every case, bound to exercise that care and diligence proportionate to the occupation which a reasonably prudent man would use under like circumstances, both to provide and keep in a reasonably safe condition the place of work; and this duty is personal to the master, and can not be so delegated as to relieve him of liability."    (Railway Co. v. Herbert, 116 U. S., 642, 648 and 652.)

On the other hand, it is the duty of the servant to exercise that degree of care which is commensurate with the character of his occupation, which a reasonably prudent person would use under like circumstances, in order to protect himself from injury; and if he fails to exercise this care he can not recover of the master for an injury to which his own negligence

has contributed, even though the master has failed to exercise due care on his part.  He can not recklessly expose himself to a known danger and to a danger which an ordinarily prudent and intelligent man would, in his situation, have apprehended, and then recover of the master for an injury which his own carelessness has caused.  (Cunningham v. Railway Co., 17 Fed. Rep., 882, 886; D'Lozier v. Ky. Lumber Co., 13 Ky. Law Rep., 818; L. & N. R. R. Co. v. Shivell, 13 Ky. Law Rep., 902; Doyle v. Swift's Iron and Steel Works, 5 Ky. Law Rep., 59; Bunt v. Mining Co., 138 U. S., 483, 485; R. R. Co. v. Jones, 95 U. S., 439, 443; Kane v. Ry. Co., 128 U. S., 91, 94.)

The degree of care required of the master and servant in particular cases is generally different, whilst each is required to exercise that degree of care in the performance of his duties which a reasonably prudent person would use under like circumstances  The primary duty on the part of the master of using care to furnish a reasonably safe place for the servant is more important than the duty of the servant to use reasonable care to protect himself, because the master is required to use a degree of care in the preparation and subsequent inspection of an entry to a mine that is not primarily demanded of a servant.  The master must inspect the entries in which the servant is engaged in work, and the servant has the right to presume, when directed to work in a particular place, that the master has performed this duty and to proceed with his work, relying upon this presumption, unless a reasonably prudent and intelligent man, in the performance of his work as a servant in a mine, under like circumstances, would be able to discern risks which defects

in the mine indicate. (Russell v. Ry. Co., 32 Minn., —;
Gibson v. Ry. Co., 46 Mo., 163.)

Defects in the roof of a mine which might be perfectly ap-
parent to the eye of a competent inspector might have no sig-
nificance to a laborer or an employe who had had no experience
in this special employment; and it would be unreasonable
to charge him with contributory negligence simply because
he sees defects, unless a reasonably intelligent and prudent
man would, under like circumstances, have known or appre-
hended the risks which those defects indicated. The dangers,
and not the defects alone, must be so obvious that a reason-
ably prudent man would have avoided them in order to charge
the servant with contributory negligence. (Kane v. Ry. Co.,
128 U. S., 94; 9 Supreme Court Rep., 16; R. R. Co. v. McDade,
135 U. S., 570, 573.)

In actions like this questions of negligence are for the
jury to determine. The ordinary care which parties are
required to use in the discharge of their respective duties
varies so much with the situation of the parties and the
circumstances of each particular case that the policy of the
law to relegate these questions to juries has been long set-
tled.

The application of these rules of law to this case clearly
authorizes its submission to the jury. The testimony does
not present a record where all reasonable men must draw
the inference either that the plaintiff was guilty of, or that
the defendant was free from, negligence. The testimony is
conflicting. It is probable that if the mine owner in this
case had sent an experienced, suitable and competent person,
after the removal of the coal by Harris on Saturday evening,
to inspect the roof of this entry at that place the defects

would have been discovered and remedied; and as to the contributory negligence of decedent which is complained of, in view of the fact that he was primarily employed as a tracklayer by the day—at a dollar a day—and it not being his special duty to see after the safety of the roof of the entry, we think he had a right to presume that the defendant had inspected and knew the roof from which this coal had been so recently removed to be reasonably safe.

This work was performed in dark passages in the earth, with no light to guide decedent except the flickering rays of the small lamp in his hat, which rendered it specially difficult for him to have noted other than obvious defects.

By the first instruction given to the jury they were told that it was the duty of the defendant to exercise reasonable care to provide the plaintiff with a safe place in which to work, considering the nature of the employment, and to exercise reasonable care to employ a competent and skillful person, whose duty it was to look after the safety of the entry, and that if the injury was caused by the negligence of the agents or servants of the defendant they would find for the plaintiff such damages as would compensate him, not exceeding the amount claimed in his petition.

By the second instruction the court told the jury that if the defendant, its agents or servants who were charged with the duty of looking after the safety of the mine where plaintiff was injured, knew, or by the exercise of reasonable care could have known, that the roof of the entry where the plaintiff was injured had become unsafe or dangerous, or could have prevented said injury by the exercise of reasonable care, and neglected to repair said roof, they should find

(41)

for the plaintiff unless they should further believe from the evidence that the plaintiff knew, or by the exercise of reasonable care could have known, of such danger in time to have prevented the injury.

By instruction No. 3 the jury were told that if they believed from the evidence that if, in the general scope of his authority, Maybury was the superior of plaintiff about the mines of defendant, yet if they further believe that at the time plaintiff was injured Maybury was not, while engaged in laying the track in defendant's entry, acting in the capacity of a superior, but was, while so engaged, a common employe with and engaged in the same kind of labor with the plaintiff, and that whilst so engaged the injury resulted to plaintiff from the negligence of Maybury, the law is for defendant.

The evidence as to Maybury's authority is conflicting, and was, therefore, properly submitted to the jury, and this instruction fairly presents to the jury, in a form very favorable to the defendant, the question as to the relative authority of Maybury and Wallace, and the degree of importance which should be attached to the words and actions of Maybury.

By the fourth instruction the jury were told that in undertaking to perform the services of tracklayer in the entry of defendant's mine plaintiff assumed all the risk ordinarily attending the performance of such services.

By the seventh instruction the jury were told that it was the duty of the plaintiff to exercise reasonable care to protect himself from dangers ordinarily incident to such employment, and if the plaintiff knew, or by ordinary care could have known, that there was danger of the slate falling from

the roof above where he was at work, and that while posses-
sing such knowledge or means of knowledge entered upon
the performance of laying the track of defendant, and whilst
so doing was injured, the law is for the defendant.   .

These instructions gave to the jury in a fair and substan-
tially correct way the law of this case.

It is earnestly contended by counsel that it was error on
the part of the court to refuse to give to the jury instructions
Nos. 2 and 4, asked by defendant, in which the jury were
told that if the plaintiff sounded or heard the slate sounded
by another that afterward fell upon him, and if this test
by sounding was the usual test resorted to by those engaged
in such work to learn the safeness or unsafeness of the roof,
and thereafter the plaintiff began the work of laying the
track under said slate, they should find for the defendant.

We can not concur in this contention of counsel, because
it singles out and directs the attention of the jury to certain
parts only of the evidence introduced on the trial of the case,
and leaves out of view the reciprocal and concurrent obliga-
tion which rested upon the defendant to exercise care and
caution to keep the roof at this point of the entry safe for
its servants.

It is further claimed by counsel for defendant that there
was an abuse of discretion and prejudicial error in the action
of the court below in instructing the jury, several days after
the case had been finally given to them for consideration,
that a verdict might be returned by a less number than the
whole jury, to be signed by three-fourths or more of them
agreeing.  It was the duty of the court to give this instruc-
tion to the jury, and, whilst it would have been better to

give to the jury all the law at the time the case was finally given to them, we do not think that this was an error which seriously prejudiced the rights of the defendant.

For the reasons indicated this cause is affirmed, with damages.

The court delivered the following response to a petition for rehearing November 18, 1897:

Appellant asks a rehearing in this case chiefly because, in the former opinion herein, we failed to consider or construe section 2732 of the Kentucky Statutes, which provides:

"Any person employed in any mine governed by this statute, who intentionally or willfully neglects or refuses to securely prop the roof of any working place under his control, or neglects or refuses to obey any order given by any superintendent of the mine in relation to the security of that part of the bank where he is at work, and whoever knowingly and willfully does any act endangering the lives or the health of the persons employed in a mine, or the security of the mines or the machinery, shall be liable to a fine of not less than $10 nor more than $50, to be recovered in the county in which the mine is situated."

It is insisted by counsel that as the entries and roadways of the mine were the working places of Grant Wallace, that the same duty and responsibility were imposed by law upon him to see after and prop the roof of the entries as devolves upon a miner, who is actually engaged in taking out coal which is the support of the roof of the mine, to see after the security of the roof of his working place; that the positive duty rested upon Wallace not only to test the condition of the roof of the entry, that he might report it to the mine boss, but that it

was a misdemeanor on his part to begin or continue the
work without first making this test to ascertain whether it
was secure or not, and if, in his judgment, it was not, then
to refrain from work until it could·be made so by props,
and that his failure to do this is contributory negligence on
his part and concludes his right to maintain this suit; and
in support of this contention we are referred to the case of
the Coal Co. v. Estivenard, 53 Ohio, 43; The Victor Coal Co.
v. Muir, 20 Colo., 320, and the Breckinridge and Pineville
Syndicate, Limited v. Murphy, 18 Ky. Law Rep., 915.

The first part of the section of the statute referred to
makes it a misdemeanor for any person employed in a mine,
who intentionally or willfully neglects or refuses to securely
prop the roof of a working place under his control.  There
is not a particle of evidence in this case to show that the
entries of this mine (which were its  roadways, used by all
the employes thereof) were in any sense under the control
of the deceased.  He used these entries in the performance
of his duties as tracklayer as did all the rest of the employes
of the mine; and, whilst it is true that in the discharge of
his duties as tracklayer his work was largely confined to the
entries, there is no evidence that tends to show that he had
any more control of them than any other employe in the mine.

The next part of the section provides that any person
employed in a mine who neglects or refuses to obey an order
given by the superintendent of the mine in relation to the
security of that part of the bank where he is at work shall
be liable to a fine, etc.  There is no testimony here which
tends to establish the state of case contemplated by this
provision of the statute, and there is no evidence which

conduces to show that it was the special duty of Grant Wallace to see after the security of the roof of these roadways, or that he neglected or refused to obey any order in relation to the security thereof. We are not unmindful of the testimony of the various bank bosses, Schugh, Hughes, Herron, Morris and Bates, who state that, as a matter of custom, it is the duty of the tracklayer to examine the roof wherever he goes, and if he sees loose slate to report it to the bank boss or gin hands, and to assist in taking it down. There can be no doubt that it is the duty of every employe in a mine to use care to avoid accidents, and when he knows of the dangerous condition of any part of the mines to report it to the superintendent or the bank boss, but there is nothing in the testimony in this case which conduces to show that any higher duty rested upon Grant Wallace in this respect than upon any of the other general employes of the mine.

In our opinion the statute was specially intended to refer to those persons actually engaged as miners, in taking out coal, and thereby removing the natural props of the roof, and that it has no application to persons who are specially employed, as was the plaintiff in this case, to perform duties which had no connection in any way with the weakening or removal of these natural supports. And this construction, we think, is borne out by the facts and decisions in the cases referred to in Ohio and Colorado. The facts in the case of the Coal Co. v. Estivenard, 53 Ohio, 43, show that the plaintiff was a practical coal miner: that he and his brother were working in the room at the time of the accident; that these two men had opened the room and had done all the work

therein since it had been opened and had sole charge and control over it; that it was the special duty of the plaintiff and his brother to post the room, and the manner in which they posted it for their own safety and for other purposes, and the manner in which the coal was mined, were matters which were controlled entirely by the plaintiff and his brother; that they went to work when they pleased and consulted their own convenience as to when they should stop work; that the furnishing and preparation of the room itself was a part of the work which these miners were employed to perform, and that the time during which they worked, the manner in which they prepared the place to work, as well as the manner in which they mined the coal in their room, were left entirely to their own judgment. The Ohio statute makes it the special duty of the coal mine owner to keep a supply of timber constantly on hand and deliver same to the working places of the miners, and a failure to do so is negligence on his part, and if an injury is proximately caused thereby an action will lie for damages; and also makes it the special duty of the miner to securely prop the roof of such working place, and if he fails to do so and thereby sustains an injury, he is made guilty of such negligence as to prevent recovery therefor.

The facts in the Colorado case referred to show that the plaintiff was a practical miner, and by his employment was engaged in taking out coal; that he had worked in and had control of the working place where he was injured for several weeks before the injury; that he knew the rock which fell on him was a bad rock and that it ought to be propped, and yet, with the full knowledge of the dangerous condition

of the roof, he continued to work within a few feet of the rock until it fell, the court holding in that case that as he had neglected a known duty, and in consequence of such negligence was injured, this was, contributory negligence, and would bar his action for damages at common law.

In the case of the Breckinridge and Pineville Syndicate, Limited v. Murphy, 18 Ky. Law Rep., 915, the facts were: That appellee was injured by the falling of slate from the roof of an entry which he had been employed to open, and where he had dug away the coal from under the very roof which afterwards fell on him, and that, after discovering the dangerous condition of the roof, he continued to work therein, the court holding in that case that he was not entitled to recover damages for injuries received under such circumstances.

In all the cases referred to the plaintiffs were engaged in actually taking coal out—in actually withdrawing the support from the roof of the mine, and in all of them they necessarily had absolute control and management of the places in which they were working, and were bound, from the nature of their employment, to look out for the security of the roof. They bear no analogy to the facts of this case. Here the mine had been opened for many years before plaintiff was employed as tracklayer, and his duty was simply to lay tracks along the entries.

In the case of the Western Coal and Mining Co. v. Ingraham, 7 Fed. Rep., 223, a case that is in many respects analogous to this, Judge Caldwell said: "Whatever may be the duty of coal miners with reference to timbering the slopes and roofs of rooms from which they remove coal, the rule

Ashland Coal & Iron Railway Company v. Wallace.

is well settled that after a mine is once opened and timbered it is the duty of the owner or operator to use reasonable care and diligence to see that the timbers are properly set and kept in proper condition and repair; and for this purpose it is his duty to provide a competent mining boss or foreman to make timely inspection of the timbers, walls and roof of the mines, to the end that the miners may not be injured by defects or dangers which a competent mining boss or foreman would have discovered or removed. This is a positive duty which the master owes the servant. Neglect to perform this duty is negligence on the part of the master, and he can not escape responsibility for such negligence by pleading that he devolved the duty on a fellow servant of the injured employe. It is an absolute duty which a master owes his servant to exercise reasonable care and diligence to provide the servant a reasonably safe place in which to work, having regard to the kind of work and the conditions under which it must necessarily be performed; and whenever the master, instead of performing this duty in person, delegates it to an officer or servant, then such officer or servant stands in the place of the master, and any servant injured by such negligence may recover from the master for such injury, regardless of the relation the injured servant sustained to the officer or servant whose negligence resulted in inflicting the injury."

The working place of the plaintiff in this case was a roadway which had been opened and used by all the employes of the mine for many years, and he had the right to presume that when directed to lay the track in the entry that the master had performed his duty and to proceed with his work,

relying upon this presumption, unless a reasonably prudent and intelligent man, in the performance of his work as track-layer, would have learned facts from which he would have apprehended danger to himself.

The petition for rehearing is overruled.