## Shapinsky & Co. v. Sapp.

(Decided March 28, 1913.)

Appeal from Jefferson Circuit Court
(Common Pleas, Second Division).

Damages—Personal Injury—Negligent Enclosure of Elevator Shaft— Contributory Negligence—Question for Jury—Evidence.—In an action by a customer against the proprietor of a store for injuries alleged to have resulted from the failure of the proprietor to properly enclose the elevator shaft, evidence examined, and held that the question of negligence of the defendant and contributory negligence of the plaintiff was for the jury.

FRED FORCHT, JR., for appellant.

BEN SPALDING, S. A. RUSSELL and A. C. VANWINKLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On October 19, 1909, plaintiff, W. T. Sapp, was in the store of the defendant, S. Shapinsky & Company, a cor-

poration, for the purpose of purchasing merchandise. Claiming that while so engaged his arm was struck and injured by defendant's elevator, and that his injury was caused by the negligence of defendant in failing to properly encase its elevator shaft, he brought this action to recover damages. From a verdict and judgment in his favor for $850, the defendant appeals.

The error of the trial court in refusing a peremptory instruction in favor of defendant is the only ground urged for reversal.

The defendant conducts a wholesale dry goods and clothing establishment in the city of Louisville. Its place of business is on the north side of Main Street, between Sixth and Seventh Streets. The building is five stories high, and there is an elevator in front of the building a few feet from the front entrance on Main Street, which runs from the basement to the fifth floor. The elevator is operated by electricity. The elevator shaft is situated on the east side of the building. In its rear is the east wall of the building. On each floor the elevator shaft is enclosed with automatic safety gates. The north and south sides of the elevator shaft are enclosed with a wooden casing on each floor. According to the plaintiff, the banister or casing was "something like three or three and a half feet—possibly a little higher. It was not over three and a half or four feet, anyhow." According to the evidence for the defendant the casing was five feet high.

At the time of the alleged accident, plaintiff, who was 39 years of age, conducted a country store in Marion County. He came to Louisville to purchase goods. For this purpose he went to defendant's store. He had ridden on the elevator once before. On the occasion in question, he went up to the second floor. He first stated that he went up on the elevator. He afterwards stated that he was under the impression that he walked up the steps, but that he would not be positive. Upon the floor and the tables were stacked piles of goods of all sorts. Plaintiff, in company with one of defendants' salesmen, examined the goods and ordered such goods as he desired. While standing near the front of the building, another salesman told the salesman who was then displaying the goods to plaintiff to have plaintiff examine a lot of head shawls upon the floor. At that time he had been on the second floor about 20 minutes. The head shawls were ricked out

close to the banister. Plaintiff was standing near the banister, and between the banister and the east wall of the building. It was a dark, cloudy day. While standing there, one of the salesmen asked plaintiff to stretch out one of the shawls so that he could observe its length. Plaintiff did this, and in holding out his arm for this purpose was struck by the elevator.. He says that his arm was caught between the floor of the elevator and the railing surrounding the elevator shaft. Could not say whether the elevator was ascending or descending at the time. No one had told him that there was an elevator there, and he did not know there was an elevator there until he was struck. He afterwards went down to the first floor and bought some hosiery, and Mr. Shapinsky's attention was called to the fact that he had been hurt. He and one of the salesmen went across the street to a saloon. The salesman ordered a high-ball, but he did not drink any. He afterwards went to the Carter Dry Goods Company, and that evening left for his home. When he reached home his arm was badly bruised and swollen. He sent for a physician, who put his arm in an antiphlogistin poultice. His arm pained him severely, and was much diminished in size. He practically lost the use of his arm. On cross-examination he stated that he was not well acquainted with the elevator system. He knew, or would naturally suppose, that it would have to have a floor to have some place to stand, and he knew it went up and down. He had been to Louisville before, and had ridden on elevators, but not many times. There were one or two elevators in Lebanon. He saw the banisters around the elevator. He naturally supposed that if a man got a part of his body over in the shaft when the elevator was coming up or down, he would get hit, but he did not know the elevator was in operation. The elevator was near the front of the building. There were windows in front of the building, but he did not know how many. He had good eye-sight at the time. He was around near the elevator shaft when he looked at the shawls. You could not get your arm into the shaft through the solid part. His arm went over the banister and got hurt. Plaintiff also introduced the physician who treated him, but it is unnecessary to consider the extent of his injuries.

The evidence for the defendant was to the effect that there were three large windows in front of the building,

and the elevator was near the front. The room was amply lighted. There was nothing dangerous or defective about the elevator or the casing or railing by which it was enclosed. The railing was about 60 inches high, and it was impossible for any person to get injured by the elevator without projecting his body over the railing. The elevator shaft could be easily seen by anyone. After going to the lower floor, plaintiff stated to one of the employes that he came near being injured. After finishing his purchases on the lower floor, he went across to the Old Inn, where he and one of the salesmen each drank a high-ball. There was some evidence to the effect that plaintiff's injuries might have been the result of scrofula.

Defendant asked for a peremptory both at the close of plaintiff's evidence and at the close of all the evidence.

For the defendant it is contended that there is not a scintilla of evidence to show that the elevator shaft was not properly enclosed, or should have been enclosed or encased in a different manner, or that it was customary for persons engaged in a similar business to encase their elevator shafts in a manner different from that employed by defendant. On the contrary, it is claimed that the evidence shows that the shaft was enclosed by wooden banisters, according to plaintiff's evidence, three and a half or four feet high, and according to defendant's evidence, five feet high. It is further insisted that the case is simply one where plaintiff, knowing the elevator shaft and banisters were there, extended his arm over the railing into the shaft where the elevators were ascending and descending, and thus voluntarily exposed himself to danger. It is therefore argued that not only was no negligence shown on the part of defendant, but that the accident was the result of plaintiff's contributory negligence in knowingly disregarding the ordinary operation of familiar natural laws, and that the case falls within the principle announced in such cases as Kelly v. Barber Asphalt Co., 93 Ky., 363; Mellott v. L. & N. R. R. Co., 101 Ky., 212; Wilson v. Chess & Wymond Co., 117 Ky., 567; McCormick Harvesting Machine Co. v. Liter, 23 Ky. L. Rep., 2154; Lindsay v. Hollenbach & May Co., 29 Ky. L. Rep., 70.

It must be remembered, however, that it was the duty of defendant to use ordinary care to keep and maintain

its premises in a reasonably safe condition for the use of its customers while examining its goods. The head shawls which plaintiff was requested to examine were ricked up against the railing enclosing the elevator shaft. This shaft, according to plaintiff's evidence, is only three and a half or four feet high. The railing in question might ordinarily have been sufficient to prevent customers from falling into the shaft, but whether or not it was reasonably safe under the circumstances of this case is a different question. Indeed, the question turns altogether on the peculiar conditions surrounding the plaintiff. He was standing by the railing at the invitation of defendant's salesmen. His mind was intent upon examining the shawls. The shawls were stacked up against the railing, and it was partly covered by the shawls. By direction of a salesman, he stretched one of the shawls out. In doing so his arm came in contact with the elevator. Plaintiff says that the day was cloudy. He reached the point where he was was injured by passing between other piles of goods. He did not know the elevator was there, and did not know that he was near the shaft. After reaching the second floor he walked around over the room, examining the goods, and even if he rode up on the elevator, we cannot say that this fact is conclusive of his knowledge that the elevator was near him when examining the shawls, or that he knowingly exposed himself to danger. Under these circumstances, we cannot say as a matter of law that the railing enclosing the elevator shaft was reasonably safe for the use of defendant's customers, or that the plaintiff himself was guilty of contributory negligence. The facts not only being disputed, but such that ordinarily prudent and sensible men might differ as to the inferences to be drawn from them, these questions were for the jury. Standard Oil Co. v. Eller, 110 Ky., 209; Ashland Coal & Iron Ry. Co. v. Wallace, 101 Ky., 626.

Judgment affirmed.