## CARDWELL v. HAYCRAFT.

Court of Appeals of Kentucky.

Feb. 19, 1954.

As Modified on Denial of Rehearing
June 18, 1954.

Coleman, Harlin & Orendorf, Bowling Green, for appellant.

Huddleston & Huddleston, Bowling Green, for appellee.

STEWART, Justice.

This is an appeal from a judgment of the Warren Circuit Court wherein the plaintiff, James D. Haycraft, was awarded damages of $8,205.05, as a result of the loss of an arm in a highway construction accident. We shall herein refer to the parties as plaintiff and defendant.

At the time he was injured on May 14, 1952, plaintiff was employed by Ellis-Kelley & Company, road contractors, in the construction of Highway No. 200 near Woodburn, Kentucky. Defendant, Herbert Cardwell, and other independent truckers were hauling crushed stone to the job for the Southern Stone Company.

On the particular day in question, the foreman, James Thornsberry, and James Burris, also employees of Ellis-Kelley &

Company, were assigned to work temporarily with plaintiff. These men operated a spreader-box which was attached to the bed of the truck involved in the mishap and this box was so regulated that in being pulled along a uniform layer of rock would be distributed. The dumpbed of the loaded truck had been raised approximately a foot and a half when it became necessary to hoist it higher. The hydraulic lift mechanism, which is controlled by the truck driver, refused to function. At this point Gene Cardwell, a brother of defendant and the operator of the vehicle, drove off to the side of the road, got out of the cab to investigate the trouble, and crawled beneath the truck to examine the hoist.

The hoist, situated on a frame under the bed, is controlled by a small cylinder located immediately beneath it. This cylinder is connected with the controls in the cab by rods that enable the driver to operate the dumpbed from the cab. The rods are connected by a small stud or pin that screws into the end of this cylinder. It was discovered that this stud or pin had become disconnected in the cylinder. In order to screw it back into position, it was necessary to remove the cotter pin holding it to the end of the rods. Gene Cardwell asked for a pair of pliers to remove the cotter pin. Burris tossed his pliers beneath the truck. Gene Cardwell took the stud off and was attempting to replace it in the end of the cylinder. At this moment, plaintiff, standing alongside the truck and perhaps better able to see the operation from his position above than Gene Cardwell, who was lying on his back beneath the truck, reached his arm between the loaded, partially-raised steel bed and the steel frame upon which it rested and undertook to insert the stud into the cylinder. The cylinder could be moved by the pressure of one's finger. While thus engaged, either alone or in conjunction with Gene Cardwell, the cylinder was pushed in past the release position. This caused the dumpbed to fall and resulted in plaintiff's injury and the loss of his arm.

At the close of all the evidence, defendant moved for a directed verdict. His motion was overruled, an exception being reserved. He now insists the court should have granted his motion for two reasons: (a) there was no proof of actionable negligence on his part; and (b) plaintiff was guilty of contributory negligence as a matter of law. As additional grounds for reversal, defendant urges that the instructions were erroneous and prejudicial in two particulars: first, because the duty to give warning of danger, imposed on the defendant, did not apply to the facts developed in this case; and second, because contributory negligence as set forth in an instruction was incorrectly defined. We shall now consider (a) and (b) together in our evaluation of the evidence.

[1, 2] Plaintiff's initial statement as to how the accident occurred is somewhat condensed and we shall quote him verbatim. He testified: " * * * I said to him, (Gene Cardwell) I said, 'a pin jumped out of the hoist there.' He said, 'Whereabouts?' I said, 'On top there.' He said, 'Can you see it?' I said, 'Yes, I see it.' He said, 'Can you put it in?' I said, 'Why, sure.' I just walked up and put the pin in, but he goes on and tightens it up, and well, you might say, when I realized anything, the bed fell on my arm, and it broke my arm. * * * " On cross-examination, he altered his testimony somewhat by saying: "I don't know whether he was screwing it (the stud or pin) down or I was screwing it down or anything, for we was both there together." No other eyewitness corroborated plaintiff's testimony.

The truck driver, Gene Cardwell, testified he was having some difficulty in inserting the stud or pin when plaintiff reached over, stuck his arm between the subframe and the runners on the bottom of the bed and took the stud from his hand, remarking: "Let me screw it in. I can screw it in better than you can." Continuing, this witness said: "And no sooner than he had took hold of it, he started to screw it, and that's when the bed fell." Several other witnesses substantiated the truck driver's testimony.

We have a contrariety of statements as to how the accident occurred. If plaintiff's

testimony that he was requested to screw the stud or pin into place and while he was attempting so to do defendant's agent tightened it and thereby caused it to fall on his arm is true, then defendant committed a negligent act that proximately caused plaintiff's injury. Or, if plaintiff acted instinctively under the stimulus of a situation created by defendant, he was not contributorily negligent as a matter of law merely because he failed to exercise good judgment or pursue the best course under the circumstances. See Eaton v. Louisville & N. R. Co., Ky., 259 S.W.2d 29. On the other hand, if plaintiff intervened voluntarily and through his independent act brought his bodily harm upon himself, as defendant contends he did, he would be guilty of contributory negligence.

The choice of conflicting versions as to the manner in which an accident happened, the decision as to which witnesses are telling the truth, and the inferences to be drawn from uncontroverted as well as controverted facts are questions for the jury. In Shapinsky & Co. v. Sapp, 153 Ky. 214, 154 S.W. 910, 911, 912, Sapp received an injury in an elevator shaft and this Court, in passing on opposing testimony as to how Sapp was injured, said: "The facts not only being disputed, but such that ordinarily prudent and sensible men might differ as to the inferences to be drawn from them, these questions (negligence and contributory negligence) were for the jury." We conclude it was proper to allow the jury to determine the questions of negligence and contributory negligence in this case.

■ It is next insisted "Instruction No. 1" should not have been given. In substance, this instruction imposed upon defendant the duty of warning plaintiff of the hazard of thrusting his arm between the bed and frame of the truck. The evidence clearly discloses that plaintiff, as well as all the others who were present on the occasion, knew it was dangerous to put one's arm between the bed and frame of the truck. Five witnesses besides plaintiff testified as to this hazard; in fact, there is no evidence on this point to the contrary. It is never necessary to warn of a condition that one knows and appreciates. Interstate Coal Co. v. Deaton, 148 Ky. 160, 146 S.W. 396. Plaintiff's knowledge of the danger up to the moment he thrust his arm between the bed and the truck frame can be said to have equaled that of defendant, and this also obviated the duty to warn. See 38 Am.Jur., Negligence, Section 185, page 862. It was not a breach of the duty to warn that brought about plaintiff's injury; it was either defendant's negligent act in tightening the pin or stud or plaintiff's independent deed in attempting to insert the pin or stud that caused his injury. For the reasons indicated, the court erred prejudicially in submitting the first instruction to the jury.

■ The final complaint concerns the language of the contributory negligence instruction. The jury was told to find for defendant if plaintiff, realizing the danger of reaching his arm between the frame of the truck and the dump body, voluntarily did so and "as *the* direct and proximate result thereof he was injured." It was the use of the word "the" before the phrase "direct and proximate" which made the instruction objectionable. It appears to be uniformly held that the employment of the definite article "the" before "proximate cause," or a phrase of similar import, is erroneous, unless the remainder of the instruction qualifies "the proximate cause" so as to make it clear to the jury that "a proximate cause" was meant. The instruction under attack fails in this respect. Reference is made to the language and the cases cited in 65 C.J.S., Negligence, § 297, p. 1253. This point is also discussed in 102 A.L.R. 411, at p. 427. We conclude that the use of "the" before "direct and proximate result" must be condemned because such language indicates that "the sole" rather than "a contributing" cause was meant.

Wherefore, the judgment is reversed and remanded for further proceedings not inconsistent with this opinion.