Case 87—Action by James Angel against the Jellico Coal Mining Company for Damages for Personal Injuries—June 2.

## Angel v. Jellico Coal Mining Co.

APPEAL FROM WHITLEY CIRCUIT COURT.

Judgment for Defendant and Plaintiff Appeals. Reversed.

Master and Servant—Injury to Employe—Assumption of Risk—Placing Dynamite Near Fire—Cause of Explosion—Fellow Servant—Negligence Imputable to Master.

Held:  1. An employe, whose duty it is to keep up the furnace fire in the air shaft of a mine, does not assume the risk from dynamite being placed near the fire to thaw by employes of the same master in a wholly distinct department of the service, over whom he had no control, who assured him of the absence of all danger.

2. The cause of the explosion of dynamite placed near a fire to thaw is a question for the jury, notwithstanding evidence that it would not explode on being subjected to heat; it having exploded either from the action of the heat, or from concussion by something striking or falling on it unknown to those present at the

time, and it being hard to understand how it could have occurred, if not from the action of the heat.

3. Placing in the air shaft of a mine, near a furnace fire which an employe is required to keep up, dynamite, which a jar or concussion of sixty pounds' weight will explode, and which the manufacturer packs in boxes marked "Highly explosive," is gross negligence, in violation of the master's duty to furnish employes a safe place in which to work.

4. An employe, whose duty it is to keep up the furnace fire in the air shaft of a mine, is not a fellow servant of employes of the same master whose duty is track-laying in the mine, and by whose negligence he is injured.

5. Negligence of fellow servants in placing dynamite near a furnace fire, which one was required to keep up, is imputable to the master, whose duty it is to furnish a safe place in which to work.

C. W. LESTER, ATTORNEY FOR APPELLANT.

Gross negligence is charged on the part of appellee in causing dynamite to be taken into the air shaft in the mine and placed near the fire to dry without warning appellant of its dangerous character.

The answer denies all the material allegations of the petition and pleads contributory negligence on the part of appellant.

At the conclusion of the evidence the court gave the jury peremptory instructions to find for appellee and from this ruling and judgment this appeal is prosecuted.

The evidence shows the following facts:

1. Appellant was put to work at a place in the air shaft perfectly secure from all danger.

2. Appellee used dynamite in its mines for blowing up slate in rooms and roadways, but not for any purpose in the air shaft.

3. That dynamite is a dangerous and highly explosive substance which was known to appellee by reason of caution on the box, "Highly explosive."

4. That dynamite is liable to explode when exposed to heat.

5. That appellee, by its agents and servants, recklessly, and in entire disregard to the safety of appellant, caused the dynamite to explode by which appellant was injured.

6. That appellant was assured by those who brought the dynamite into the air shaft that there was no danger in it.

7. These facts being shown there was a *prima facie* case of gross negligence shown. McKinney on Fellow Servants, pp. 60 and 61; also p. 73 and notes.

TYE & DENHAM, ATTORNEYS FOR APPELLEE.

1. A servant free from contributory negligence on his part may recover of the master for injury which is the result of gross negligence of a superior servant and the right to such recovery may be had only by virtue of the common law.

2. Appellant had been working at this furnace for five years, and dynamite had been thawed there for two years.

3. Although appellant complained that he was afraid it might explode and was told by his fellow servants that there was no danger, he continued to work without any promise from the master to quit thawing the dynamite at the furnace, and that, too, with the knowledge that it was continuously being thawed there.

4. There was no evidence tending to show that frozen dynamite is liable to explode from heat when placed near a fire, and such is not a fact.

5. There was no allegation in plaintiff's petition that appellee knew, or ought to have known, that frozen dynamite was liable to explode from heat when near a fire; (a) or that the injury was caused by the negligence of a superior servant; or (b) that the method of thawing the dynamite was unsafe; or (c) that plaintiff did not know that such method was unsafe; or (d) that frozen dynamite was more dangerous than unfrozen dynamite when placed near fire.

### CASES CITED.

Cincinnati, &c., Railroad Co. v. Collins; Louisville & Nashville Railroad Co. v. Collins, 2 Duv., 114; Louisville & Nashville Railroad Co. v. Rains, 15 R., 423; I. C. R. R. Co. v. Josey's Admx., 22 R., 1798; Volz v. Chesapeake, &c., R. Co., 95 Ky., 188; Louisville & Nashville Railroad Co. v. Brantley's Admr., 96 Ky., 297; Bell & Coggeshall Co. v. Applegate, 23 R., 471; McCormick Harvesting Machine Co. v. Liter, 23 R., 2155; Breckenridge Company (Limited) v. Hicks, 94 Ky., 366; Beach on Contributory Negligence, sec. 371; Bogenschutz v. Smith, 84 Ky., 336.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

This action was instituted by appellant in the Whitley circuit court to recover of appellee damages for personal injuries alleged in the petition to have been sustained by an explosion of dynamite which servants of appellee, in a different line of service to that in which appellant was en-

gaged, had negligently placed near and in front of the fire
of a furnace in the air shaft of its mine, that appellant,
as its servant, was required to keep up. It is also averred
in the petition that the dynamite was put in front of the
fire to thaw, the heat of which caused it to explode, and
that it was a very dangerous explosive, though its danger-
ous character was at the time unknown to him, but was
known to appellee's servants who placed it near the fire.
The answer denies the negligence complained of in the peti-
tion, and, in addition, alleges contributory negligence on
the part of appellant, which latter plea is controverted by
reply. Upon the conclusion of appellant's evidence, the
jury, in obedience to a peremptory instruction from the
court, returned a verdict for appellee. Appellant complains
of the giving of the peremptory instruction by the lower
court, and of its refusing him a new trial, and by this ap-
peal asks relief at the hands of this court.

It appears from the evidence that one Gofford was the
foreman of the appellee, and in control of its servants
charged with the duty of track-laying in the mine, and that,
in the performance of that work, dynamite was used in re-
moving slate and other obstructions. It was used for no
other purpose in the mine, and was under the exclusive con-
trol of Gofford, who sometimes caused it to be placed in
front of the furnace fire to thaw. The furnace fires were
kept up by appellant, who testified that he had never used
dynamite, or seen it used, but that he was afraid of its ex-
ploding in the process of thawing, and expressed his fear
of it to Gofford, and also to John and Howard Jenkins,
each of whom had occasionally placed it near the furnace
fire. But they assured him that there was no danger of
an explosion, and John Jenkins said it could not explode
unless there was a cap on it. It also appears that the dyna-

mite that caused appellant's injuries was placed before the
fire by Howard Jenkins, one of Gofford's hands, by the lat-
ter's direction. It does not appear that appellant saw or
knew of it being so placed on that occasion, but it is not
material whether or not its presence was known to him.
The explosion occurred while appellant, Howard Jenkins,
and other employes of appellee then present, were eating
their noon meal. Appellant's neck and shoulders were
wounded, and his hand badly burned, by the explosion. In
fact, his injuries caused thereby were so serious and painful
as to compel him to keep his bed for more than a month,
and his hand was so injured that he has never since been
able to close it, and that member is therefore permanently
injured.

It is the duty of the master to supply the servant with
reasonably safe and suitable tools and machinery to per-
form the work required of him, and equally his duty to fur-
nish the servant a reasonably safe place to work, and to
see that it is kept so. Appellant, in undertaking for ap-
pellee the work of keeping up the furnace fires in the air
shaft of its mine, assumed the risks that are necessarily or
usually incident to such service, but it can not be contended
that danger or risks such as arise from the use of dyna-
mite by other servants of the same master in a wholly dis-
tinct department of service were in any way connected with
or incident to appellant's work as fireman. In the case
of Ohio Valley Railway Company v. McKinley, 17 R., 1028,
33 S. W., 186, this court applied the principle here an-
nounced. McKinley was injured by the premature explosion
of dynamite which was then being used by him and other
servants of the railway company in blasting rock. It ap-
pears that he was furnished an iron rod by his employer
for tamping dynamite in the hole drilled for that purpose,

and that its use was highly dangerous, because of the violence of the concussion produced thereby, and in fact that the premature explosion resulted from its use. It was alleged in the petition that the danger of using the iron rod was known to the railway company, its agents, and the superintendent then in charge of the quarry, but was unknown to McKinley, although he had for several months used the iron rod for tamping. This court, upon these facts, held that it was the plain duty of the defendant to have furnished its employes a wooden rod, instead of the iron, and that it was clearly negligent in providing only the iron rod, as the evidence all tended to prove that the danger was greatly diminished in tamping with a wooden rod. Continuing the discussion on this point, the court said: "It is hardly accurate to say that the servant so employed assumes the risk incident to his employment. It may be the law to say that he assumes the risks necessarily incident to his employment, when the risk is considered with reference to the primary duty of his employer to furnish tools, and in fact all other instruments, means, and agencies necessary to be used in the prosecution of his business, reasonably safe and secure for the purpose used. But this duty of the employer is the first and primary duty, and should at all times by the trial courts be kept steadily in view, and no construction of the law should be tolerated that needlessly exposes the servant to danger in the prosecution of the business of the master. Humanity itself demands this much consideration by the employer for the lives and safety of his servants, and, the greater the danger to the servant, the greater should be the care and caution demanded by the law of his employer." The appellant's only duty was to keep the fire in the air shaft burning. There was no risk whatever in the performance of that

duty. He was practically as secure from all danger from injury there as he would have been in his own home, but for the placing of the dynamite in proximity to the fire at his post of duty. He had no control over those who thus placed it, or of the deadly explosive itself, and his apprehension of an explosion had doubtless been removed by the repeated assurances of Gofford and the two Jenkinses of the absence of all danger.

Evidence was introduced by appellee to prove that the dynamite would not explode upon being subjected to heat, and that it had even been consumed without exploding. Be that as it may, it did in this instance explode, either from the action of the heat, or by concussion produced by some object striking or falling upon it unknown to those present at the time. But in view of the evidence, it is hard to understand how it could have occurred, if not from the action of the heat. At any rate, it was the province of the jury to determine the cause. Howard Jenkins, who is evidently experienced in the use of dynamite, testified upon the trial that a jar or concussion of 60 pounds' weight would cause it to explode, and the manufacturer, in order to warn the public of its dangerous character, labels each box of it, "Highly explosive." It must be presumed, therefore, that appellee's servants intrusted with the use of the dynamite knew it to be a highly dangerous explosive; and it was their duty to have provided some place other than the air shaft of the mine, where it could be thawed without risk of injury to appellant or other employes of appellee, and in placing it in the air shaft they were guilty of gross negligence, in that they made the further performance of the duties of appellant's employment dangerous in the extreme, thereby violating the primary duty which appellee owed

him—to provide and maintain a reasonably safe place for the performance of the work required of him.

There is nothing in the evidence conducing to prove contributory negligence on the part of appellant; nor can it be contended that his injuries were caused by the negligence of his fellow servants, as the negligent parties, though servants of appellee, were in a department of its service wholly different from that in which appellant was engaged. But if they were fellow servants, it would not relieve appellee in this case, as its duty to appellant required it to provide him a reasonably safe place in which to work, and the negligence of those who placed the dynamite before the furnace fire was and is imputable in such a case to it, as master. Tradewater Coal Co. v. Johnson, 24 R., 1777, 72 S. W., 274.

Being of opinion that the lower court erred in giving the peremptory instruction, the judgment is reversed, and cause remanded, with directions to the court to set aside the verdict and judgment, and grant the appellant a new trial, consistent with the opinion herein.