Williams Coal Co. v. Cooper.

CASE 39—ACTION BY JAMES COOPER AGAINST THE WIL-
LIAMS COAL COMPANY.—May 6, 1910.

# Williams Coal Co. v. Cooper.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From a judgment for plaintiff, defendant appeals.
—Affirmed.

1   Master and Servant—Injuries to Miner—Assumption of Risk
    —Method of · Work.—A coal mine driller was employed to
    enter different rooms in a mine· and drill the face of the
    coal, so that it could be shot and removed.  After he had
    operated in a room, a set of men called "loaders" would
    enter, shoot the coal, take it away, and then prop the roof
    so that it would be safe to again enter for the purpose of
    drilling, etc.  The driller would go into any room without
    directions that appeared to have been made ready for him,
    and the operation would continue.  On entering   a   place
    which had been propped, the driller was injured because of
    the improper propping, and sued for the injuries.  Held, that
    plaintiff did not assume the risk because he was not di-
    rected to go into the room he did, since the facts showed
    that that was the system of work.

2.  Master and Servant—Safe Place to Work—Mines—Drillers.—
    Held, also, that, although to persons making a place in a mine
    safe the master owed no duty of furnishing a safe place to
    work because of the changing conditions and nature of the
    work, still the master did owe such a duty to plaintiff, since
    he was not charged with the duty of inspection and making
    the place safe.

3   Master and Servant—Safe Place to Work—Making Place Un-
    safe—Mines.—Neither could it be said that plaintiff was en-
    gaged in the work of making the place unsafe so that the
    master would not .be liable for the injuries, since the injuries
    occurred from the failure to properly prop the roof which had
    no connection with his work, and was done by an entirely
    different set of workmen.

4.  ·Master and Servant—Injuries to Miner—Delegation of Duty
    —Judgment of Servant.—Held, also, that the master could
    not escape liability as a matter of law on the theory that,
    though charged with the duty of furnishing a safe place, he
    had delegated that authority to the loaders, and their judg-
    ment that the place was safe was conclusive.

5.  Master and Servant—Injuries to Miner—Failure to Comply
    with Statute.—Neither was plaintiff barred a recovery be-
    cause Ky. St. section 2732, provides that any person em-
    ployed in a mine who willfully neglects to prop the roof
    of any working place under his control shall be liable to a
    fine, since such statute was not applicable to him because
    he was not charged with the duty to prop.

6.  Master and Servant—Injuries to Miner—Evidence Admissi-
    ble Under Pleading.—Under a petition for injuries to a miner,
    charging that the unsafe place to work was caused by a
    loose slate, shale, and rocks being suffered and permitted to
    remain in the roof, which ought to have been taken down
    and out of the roof by defendant or secured by props, testi-
    mony of the persons whose duty it was to prop the roof
    concerning the failure to furnish sufficient props is admis-
    sible, as the pleader is not required to specify each act
    of negligence.

7   Appeal and Error—Harmless Error—Argument of Counsel.—
    Where no complaint could be made to the amount of the
    verdict in a personal injury action, and the evidence fully
    warrants the verdict and the instructions fairly submitted the
    law, argument of counsel, though transgressing the rules of
    propriety and going beyond the limits of legitimate argu-
    ment, will not be deemed prejudicial.

GLENN & SIMMERMAN and W. T. ELLIS for appellant.

M. L. HEAVRIN, BEN D. RINGO and ERNEST M. WOOD-
WARD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirm-
ing.

This action was instituted by appellee to recover
damages against the appellant company for injuries
received by slate falling from the roof while work-
ing as a machine operator in its coal mine.  He was
an experienced miner, and had been engaged in the

special service he was performing when injured for
some months.   His duties were to run a machine
operated by compressed air and used in cutting an
excavation in the face of the coal near the bottom of
the room; the excavation running back some six or
eight feet.  After the coal had been thus cut, "load-
ers" would shoot down the coal by blasts and load
the same on cars in which it was removed from the
mine.   Cooper's duties required him to do the cutting
with this machine in several rooms in the mine—his
work in each room usually requiring about 90 min-
utes.   When he had finished cutting in one room, the
machine, which weighed about 750 pounds, would be
rolled into another room; and so on, until all of the
rooms were cut.   In the performance of this labor
he did not receive or require special directions as to
which room he should cut; it being understood that
he would go into the rooms in the order in which the
cutting was needed for the purpose of keeping the
"loaders" who were engaged in shooting and haul-
ing out the coal occupied.   After the coal was cut
and shot down and removed from the room, it was
the duty of the "loaders" to prop the roof of the
room with props furnished by the mineowner, to pro-
tect the roof from falling, and make it safe for oc-
cupancy by the cutter or machine man, who had
nothing to do with propping or protecting the roof.
After each cutting, shooting, and hauling out, the
props would be advanced to within 10 or 12 feet of
the face of the unmined coal, unless the roof was bad.
If it was bad, the props would be placed closer to the
face of the unmined coal.   In other words, the idea
was to regulate the location of the props by the con-
dition of the roof of the mine, and to use as many

props and in such places as the conditions seemed to demand. If the roof was regarded as safe, then the props were placed 10 or 12 feet from the face of the unmined coal, and the machine when engaged in cutting would be located between the props and the unmined coal. If the props were placed closer than this to the face of the coal, the machine would be so located as to cut between them, as it could not be operated between the props and the face of the coal unless the distance was some 10 or 12 feet. At the time Cooper was injured, the props in the room in which he was working were about 12 feet from the face of the coal, and Cooper and his machine were between the props and the coal he was cutting. The petition charged that ''the duties of plaintiff required that he give his constant attention to the operation of his machine, and he was not chargeable with any duty of propping, inspecting, or otherwise safeguarding the roof or top of the mine, and that while he was employed as aforesaid, and acting within the scope of his employment, and in the observance of ordinary care for his own safety, in a room of the defendant's mine, which room and adjacent portion of its mine the defendant had wrongfully and negligently suffered and permitted the room in which Cooper was injured to be and remain in a dangerous and unsafe condition for more than 10 days prior thereto, which dangerous and unsafe condition resulted from and was caused by loose slate, shale, and rocks being suffered and permitted to remain in the roof, which loose shale, rocks, and slate ought to have been taken down and out of the roof by the defendant, or have been secured by props, and which loose, dangerous, and unsafe condition of the slate, shale, and rocks were known to the defendant, or

might have been known to it by the exercise of ordinary care, but which was unknown to the plaintiff, who could not discover the same by the exercise of ordinary care in the discharge of the duties of his employment." The answer was a traverse and plea of contributory negligence, and the trial resulted in a judgment for $9,500.

The substantial errors assigned are (1) that the motion for a peremptory instruction should have been sustained; (2) that appellee was not ordered or directed to go into the room where the injury occurred, and hence assumed the risk; (3) that the court misinstructed the jury; and (4) that the attorney for appellee in his closing argument was guilty of improper conduct.

We do not think it worth while to take much time discussing the propositions that Cooper was not ordered or directed to work in the room where the injury occurred, or told that it was ready for him. The evidence is virtually undisputed that it was Cooper's duty to cut the coal in some 15 rooms, and that he was never directed to go into any particular room. His general instructions were to cut the coal in the rooms as the cutting was needed, and this practice he had been following without interference, objection, or instruction for some six months before he was injured. He was not directed to go into the room in which he was injured, nor was he directed not to go into it. No instructions upon the subject were necessary. He went into the room in the usual course of his employment, and according to his regular custom. He was not informed that the room was ready for him, nor was he told that it was not; nor was it necessary that he should have any special information upon this point, unless the room had not

been made ready for his reception by the "loaders."
The coal had been removed from the room, the
"loaders" had propped it, and in the ordinary
course of Cooper's employment without notice to the
contrary it was ready for him.

The argument that the jury should have been di-
rected to return a verdict for the company is put
upon the ground that the company was under no duty
to furnish Cooper a safe place, or, if it was, that
it did so; and, further, that it was his duty to see
that the room was properly protected before work-
ing in it. The case for Cooper was predicated upon
the proposition that it was the duty of the company
to furnish him a reasonably safe place in which to
work, and, unless this duty was imposed upon the
company, there can be no recovery on account of the
failure to keep the place reasonably safe. In sup-
port of the theory that it was not the duty of the
company to furnish a safe place, the argument is
made that, as the conditions in the room were con-
stantly changing by virtue of the excavation and re-
moval of the coal, it was not practicable to furnish
a safe place for Cooper to work in, and so the law
imposing upon the master the duty of furnishing the
servant a reasonably safe place does not apply. It
is true that the shape and dimensions of the rooms
in which Cooper worked with his machine were con-
stantly changing, as the coal was mined. They were
necessarily enlarged as well as altered in appearance
by the excavation of the coal. It also seems likely,
and we may so assume, that, as the size of the rooms
increased, the danger from defective conditions in
the roof became greater. But these changes con-
stantly going on in all coal mines do not relieve the
master from the duty of keeping the mine reasonably

safe for those not charged with the duty of inspecting or examining for themselves to ascertain whether or not the place in which they work is safe. In mining, as well as many other occupations, there are persons whose duty it is to examine and provide for the safety of the places in which other servants are to work. There are servants who prepare the places and servants who work in these places after they have been prepared. As to the servants engaged in the work of preparation, and who are employed to make places safe for other servants, the doctrine of safe places does not apply. The master should not in reason be required to make the places safe for those he has employed to put them in a safe condition. Ballard & Ballard Co. v. Lee, 131 Ky. 412; Mowrey v. Frazier, 120 S. W. 289. But, as to those servants not charged with the duty of preparation examination, or inspection, and who have the right to and do depend upon the master performing this service through the agency of other servants, and who are only required to go into places after they should have been made reasonably safe, there is no good reason why the rule of safe place should not be applied. Nor is there any reason why mineowners should be exempt from the operation of this rule, or why miners should be subjected to hazards and risks greater than those assumed by other servants.

But it is insisted that Cooper himself was engaged in making the place unsafe. That he was as much a party to the operations by which the enlargement of the roof space increased the danger of falling slate as were the "loaders" and persons who took out the coal after it was blasted. It is true that Cooper performed a part of the labor by which the danger attending operations in the room was increased. But

when Cooper finished his cutting, and removed his machine from the room, it was then turned over to another set of employes, who worked entirely independent of Cooper, and in what might well be called another field of employment. They had no supervision or control over Cooper or his duties, nor did he have over them or their duties. With his machine he made the necessary excavation and moved out, and did not again come into the room until the "loaders" and other persons had finished their work. After the coal cut and blasted had been removed from the room, there was no reason why the roof should not have been made reasonably safe. All that was required to make it safe was to prop it. With this Cooper had nothing to do. It was the master's duty to exercise reasonable care to see that this was done by the persons employed for that purpose. If they failed to do it, it was the negligence of the master. We can well understand how the person whose duty it was to inspect the roof and see that it was made safe could not complain if injured by defects in the roof that it was their duty to safeguard, provided they were furnished with the necessary material. The doctrine of safe place and corresponding duty of the master did not embrace them, as they were employed for the special purpose of keeping places liable to be unsafe and dangerous in a safe condition. But it would be extending to unreasonable limits and far beyond the settled rule in this state to say under the facts of this case that the master was not under a duty to keep the room in a reasonably safe condition for Cooper's protection. When it is kept in mind that Cooper was under no duty to examine or inspect or prop the roof, and that this duty was or should be performed by others, and further that

there was no reason why the room could not have been made reasonably safe by the exercise of reasonable care on the part of the master, it is difficult to perceive upon what ground it can be said that the master did not owe Cooper the duty of keeping the room in a reasonably safe condition. Tradewater Coal Co. v. Johnson, 72 S. W. 274, 24 Ky. Law Rep. 1777, 61 L. R. A. 161; Angel v. Jellico Coal Co., 115 Ky. 728, 74 S. W. 714, 25 Ky. Law Rep. 108; Ashland Coal Co. v. Wallace, 101 Ky. 626, 42 S. W. 744, 43 S. W. 207, 19 Ky. Law Rep. 849; Mason, Hanger & Coleman Co. v. Kennison, 121 S. W. 999; Hanley v. California Bridge Con. Co., 127 Cal. 232, 59 Pac. 577, 47 L. R. A. 597.

Mining under the most favorable conditions is a hazardous business, and, as well said in Kreigh v. Westinghouse Church Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984: ''Where workmen are engaged in a business more or less dangerous, it is the duty of the master to exercise reasonable care for the safety of all his employes, and not to expose them to the danger of being hurt or injured by the .use of a dangerous appliance or unsafe place to work, where it is only a matter of using due skill and care to make the place and appliance safe. There is no reason why an employe should be exposed to dangers unnecessary to the proper operation of the business of his employer.'' Counsel for the appellant strongly rely on the case of Smith v. North Jellico Coal Co., 131 Ky. 196, in support of the proposition that they were entitled to a peremptory instruction, but a comparison of the facts of this case with those stated in the opinion in the Smith case will readily disclose the marked difference between them. In the Smith case, Smith was engaged in operating

a coal cutting machine, as was Cooper, and "shooters" and "gin men" who were performing substantially the same duties as the "loaders" in this case, examined the room in which Smith was injured before the roof fell, and informed him that it was ready for him to cut. But here the resemblance between the two cases upon two vital questions ceases. In the Smith case it is stated in the opinion that: "The top of the mine was of slate, and had a hill seam running across it. At best, the top was bad, being the miners term 'a rotten top,' and the hill seam which was a large crack through which water percolated into the mine made it still worse. * * * There is no doubt that the evidence shows the roof of the room where the decedent was working was bad, and its natural danger was enhanced by the existence of the seam running across it. This condition was known to all the employes, being perfectly obvious to the eye." In addition to this, it is further said in the opinion that: "The evidence for the plaintiff, Smith, shows that, while it was the duty of the 'shooters' to pull down loose slate and carry it out, after all, it was the duty of the decedent to judge of the safety of his surroundings himself. The very work he was doing made the room dangerous, unless it was propped, and it was his duty whenever he needed or thought he needed props to call for them, and the 'gin men' were required to bring them in and put them up. * * * The decedent did not call for props, and, when he had taken out sufficient coal to cause the pressure from above to break the slate, so that it fell upon him, the resulting injury was caused by his own fault and of necessity his estate must suffer this loss. * * * The evidence, as said before, showed that it was the duty of decedent

to call for props when he needed them, and that it appears the danger of the place where he was working was constantly changing and increasing as the work progressed, unless the roof was propped. It necessarily results that, as he failed to take the ordinary precaution to prevent injury to himself, he alone must bear the resulting injury." It will thus be seen that in the Smith case the opinion was rested largely upon the fact that the dangerous condition of the roof was known to Smith, and that it was his duty to judge of the safety of the surroundings himself and request that the room be propped if props were needed to support the roof. In this case, there is no evidence that the roof of the room in which Cooper was injured was so dangerous as to attract attention, or that it was any part of his duty to examine the roof or to look after the propping. This being true, he had the right to assume that the roof was reasonably safe, and was not guilty of such contributory negligence in the performance of any duty imposed upon him by his employment as would defeat a recovery.

There is no question of assumed risk or fellow servant in the case. The persons whose duty it was to prop the mine were not the fellow servants of Cooper. And, as the master was under a duty to furnish Cooper a reasonably safe place in which to work, the master, and not the servant, assumed the risk. We may further add that it is not insisted that the defects in the roof that fell were so apparent that a person situated as Cooper was could discover them by the exercise of ordinary care, and so the question of obvious danger is not involved. Indeed, so far as the chief contention of counsel for appellant is concerned, the case resolves itself into the ques-

tion whether or not it was the duty of the master to furnish Cooper a reasonably safe place in which to work. We have endeavored to show why it was, and will now notice the other errors assigned for reversal.

It is argued that, if it was the duty of the coal company to keep the room reasonably safe, this duty was performed, as the "loader" whose business it was to examine the roof and put it in a reasonably safe condition performed this service; at any rate, exercised his best judgment in attempting to do so. And it is said that, as the "loader" believed after inspection that the room was reasonably safe, his judgment is conclusive of the question that the master furnished a reasonably safe place. But with this argument we cannot agree. In the opinion of the "loader" the room may have been reasonably safe, but the fact that the roof fell soon after his inspection demonstrates that it was not reasonably safe. If in cases like this the master could be relieved of liability upon the statement of the person charged with the duty of inspection that in his judgment the place was safe, there would be but few cases in which an employe who relied upon the inspection, and was injured, could recover, as it is fair to assume that in every instance the person charged with the duty of inspection would say that he had performed it. But his statement is not conclusive. It was a question for the jury to say from the evidence whether or not the place was reasonably safe. And in considering this question they had the right to give such weight as they deemed proper to the statement of the inspector. They may or may not believe from it that the master discharged his duty in furnishing a reasonably safe place.

It is next insisted that, under section 2732 of the Kentucky Statutes, it was the duty of Cooper himself to either prop or see that the roof was securely propped before beginning his work. This statute, a part of the chapter relating to mines and mining provides that: "Any person employed in any mine governed by this statute who intentionally or willfully neglects or refused to securely prop the roof of any working place under his control, * * * and whoever knowingly and wilfully does any act endangering the lives or health of the persons employed in a mine, or the security of the mine or machinery, shall be liable to a fine of not less than ten dollars nor more than fifty dollars. * * *" But in our opinion this statute has no application to the case in hand, as it was no part of the duty of the appellee to prop the room. The statute makes it the duty of those whose business it is to prop the mine, subject to a penalty for failure to do so, and applies only to those charged with that duty. Ashland Coal Co. v. Wallace, 101 Ky. 626, 42 S. W. 744, 43 S. W. 207, 19 Ky. Law Rep. 849.

The instructions are criticised, but we have carefully read and considered them, and they seem unobjectionable. The jury were told, in substance, that if the company failed to exercise ordinary care to prop or secure the roof in the room in which Cooper was working, and by reason of such failure the place where he worked was not reasonably safe, and that this condition, if any, was known to the company or could have been known to it by the exercise of ordinary care in time to have repaired the same and thereby prevent the injury, and that by reason of said unsafe condition Cooper was injured, they should find for him, unless they believe that he knew

of the unsafe condition, or could have known of the same by the exercise of ordinary care. They were further told that they should find for the company if they believed from the evidence it was the duty of Cooper to inspect the room where he was injured, and he failed to make such inspection, and, also, that it was his duty to exercise ordinary care for his own safety.

Nor is the instruction defining the measure of recovery open to criticism.

Complaint is also made that Bishop, the person whose duty it was to prop the room, was allowed to testify concerning the failure of the company to furnish sufficient props. The objection to this evidence is that the petition did not authorize it. The petition charged that the unsafe place was caused by "loose slate, shale, and rocks being suffered and permitted to remain in the roof, which loose shale, rocks, and slate ought to have been taken down and out of the roof by the defendant." Under this general allegation, it was competent to show the particular acts of negligence that went to make up the failure of the company to keep the place in a reasonably safe condition. The pleader is not required to specify each act of negligence, but may charge in a general way in what the negligence consisted, and this he did. The petition gave ample notice that the question of props would play an important part in the trial of the case.

It is also assigned as error that counsel for appellee was guilty of misconduct in his closing argument. The argument complained of consisted chiefly in fervid oratorical comments upon coal operators generally, and, while at times counsel transgressed the rules of propriety and went beyond the limits of

legitimate argument, we do not think the improper statements would warrant us in reversing this case, although we may add that, if the recovery was less meritorious, we would be strongly inclined to again mark our disapproval of the character of argument indulged in at times by counsel by sending this case back for a new trial. But here we have a record in which no complaint is made or could be made of the amount of the verdict, and in which the evidence fully warranted the jury in finding for the plaintiff. The instructions fairly submitted the law, and under these conditions we are not disposed to say that the argument complained of was prejudicial.

Upon the whole case, we find no error that would warrant a reversal of the judgment, and it must be affirmed.

BARKER, C. J., dissents.