## Fluhart Collieries Company v. Meeks.

(Decided October 7, 1914.)

### Appeal from Johnson Circuit Court.

1. Master and Servant—Injury to Servant—Contributory Negligence of Servant—When a Defense to the Master.—In an action by the servant to recover of the master damages for an injury sustained by the former in moving a defective electric machine used for cutting coal in the mine of the latter, and its answer pleaded contributory negligence on the part of the servant, it was error for the trial court to refuse an instruction, asked by the master, which, in substance, told the jury that if they believed from the evidence that at the time of receiving his injury the servant and another aiding in the operation of the machine were, at the instigation of the servant, attempting to move the machine by a method forbidden by a rule of the master, then in force and known to the servant to be in force, and should further believe from the evidence that the servant would not have been injured but for such method of moving the machine the law was for the master, and the jury should so find. This instruction, together with that on contributory negligence, given by the court, would have advised the jury of all the law with respect to the grounds of defense mainly relied on by the master, and in support of which much of the evidence in its behalf was directed.

2. Master and Servant—Machinery Used in Master's Business— Duty of Master to Servant in Respect to—Duty of Servant.— It was the duty of the master to use ordinary care to provide the servant with a machine that was reasonably safe for use by him, but the servant was under no duty to inspect the machine for the purpose of ascertaining whether it was reasonably safe for the use he was required to make of it. If, however, it was so defective in any of its parts as that it was not reasonably safe for the use of the servant, and this was so obvious as that one of ordinary intelligence and judgment, situated as was the servant, could, before receiving his injury, by the exercise of ordinary care, have discovered the defect and that the machine by reason thereof was not reasonably safe for the use

to which he put it, he would not be entitled to recover of the master for the injury sustained.

3. Master and Servant—Injury to Servant from Defective Machinery—Effect of Intervening Negligence of a Fellow-Servant.— Where an injury is sustained by the servant as the result of the master's negligence in failing to provide him reasonably safe machinery with which to perform his work, although such negligence would not have caused the injury but for the intervening accidental or negligent act of another employee of the master in the same field of service with the injured servant, the fellow-servant doctrine cannot be invoked by the master to escape liability for such injury; as in such case the act of the fellow-servant, whether accidental or negligent, will be treated as combining or concurring with that of the master in causing the injury, or he will be regarded as the vice-principal of the master and his negligence imputed to the master, and in either case the primary negligence of the master in failing to provide the injured servant with machinery reasonably safe to do the work required of him will be regarded as the proximate cause of the injury.

4. Master and Servant—Assumed Risk—When it Does Not Apply.— When it is made to appear that the negligence of the master in failing to provide the servant with a reasonably safe place to work, or reasonably safe machinery or tools with which to perform the work, is the proximate cause of an injury sustained by the servant, the latter will not be held to have assumed any risk that would not, by the use of ordinary care, have been obvious to a person of ordinary intelligence in a like situation.

C. B. WHEELER for appellant.

FOGG & KIRK for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This appeal is from a judgment entered upon a verdict returned in the court below awarding the appellee, Jack Meeks, one thousand dollars damages against the appellant, Fluhart Collieries Company, for an injury to his leg resulting from its coming in contact with a machine used in appellant's mine for mining coal; it being alleged in the petition that appellee was employed by appellant as a helper at the machine and that his injuries were caused by appellant's negligence in permitting the mining machine to be and remain in such a defective condition as to render it unsafe and dangerous for use. The appellant's answer specifically denied the negligence complained of; alleged contributory negligence on the part of appellee, and that but for same he would not have been injured. The filing of appellee's reply, con-

troverting the plea of contributory negligence, completed the issues.

We gather from the evidence appearing in the record that the machine in question was what is commonly known as an under-cutting coal machine, weighing about four thousand pounds. It is operated by electricity, the current being carried through the entries of the mine on a trolley wire and from this wire transmitted to the machine by a wire connecting the machine to the trolley wire. The machine can be moved from place to place in the mine as needed, and also from one position to another while cutting coal in a room. It is controlled—started and stopped—by means of a starting-box or controller, which is fastened on the left-hand side of the rear of the machine and to the frame thereof; and this box or controller is operated by a lever that the operator pushes forward in order to start, and backward to stop, the machine. In other words, as the lever is pushed forward by the operator it turns on the current of electricity and puts the machine in motion, and the further it is pushed forward the faster the machine will run. To stop the machine or lessen its speed, this lever must be pulled backward. Two men are required in operating the machine. The operator stands at the rear of the machine where he can readily manipulate the lever of the box or controller. The position of the helper is at the side of the machine, it being his business to shovel away the small coal and dust falling from the face of the coal while it is being cut by the machine. The machine is moved from place to place by the operator and helper, the labor of both being required for that work.

The operator of the machine at the time appellee was injured was his brother, Isaac Meeks, and appellee was injured while he and his brother were attempting to move the machine. They both testified that when the machine has a clear space on each side of it the customary way of moving it is with a pinch bar, which is used in prizing it over by hand, but that when the machine is against the side of the wall and face of the coal, leaving no room on the side from which it is to be moved for the use of a pinch bar, the customary manner of moving it is by the use of a piece of iron pipe about three feet in length, one end of which is placed against the corner where the working face of the coal and the rib side intersect, and the other end over and against one of the bits of the machine, and then having the operator of the machine to

slightly turn the current on, which gives enough motion to the machine to cause the resistance of the chain against the end of the pipe to shove the end of the machine around sufficiently for the helper to get between it and the rib side and with the aid of the pinch bar, which can then be used, accomplish the remainder of the work of removal. According to their further testimony, immediately before appellee was injured it became necessary to move the machine, and there not being space enough between it and the rib side to move the machine by inserting the pinch bar and prizing it over, appellee attempted its removal in the manner above stated, that is, he placed the iron pipe in position as above described and stepping back two or three feet, told his brother, the machine operator, to turn on enough electricity to move it a little. This the operator attempted to do, but as he slightly pushed the lever of the starting box forward for that purpose, the box fell down and forward from its proper place on the frame of the machine, which threw it in such a position as to push the lever further forward than intended, jam it and prevent the operator from getting his hand to it. In this way an unnecessary voltage of electricity was thrown on the machine, which gave it a more violent motion than was required and threw it around and toward the appellee in such a way as to catch him in the bit and chains and cut and injure his leg.

According to appellee's contention and all the evidence in his behalf, the movements of the machine could have been controlled and the machine moved as attempted, with safety to appellee, but for the starting box or controller being loose and becoming detached, where there was no bolt, from the frame of the machine. Appellee, the operator Isaac Meeks, and Al Daniels, testified that the injuries sustained by appellee were caused in the way above indicated and no other, and it appears from their testimony, as well as that of appellant's witnesses, that the starting box was fastened to the frame of the machine by iron bolts which held it about two or three inches above the frame of the machine, and that the upper bolt was not in the starting box at the time appellee was injured and had not been for three or four months previously. In fact, it was stated by one or two of appellant's witnesses that this bolt had been removed by its former employe, Evans, then operating the machine, because it so raised the box as to cause it to rub against

the roof of the mine where he was at the time working, and that upon removing the bolt he placed under the box a wooden wedge for the purpose of keeping it the thickness of the wedge above the frame. So there was no contrariety of evidence as to the fact that one of the bolts of the box had been removed and was not in it at the time appellee was injured.

As to the effect upon the box of the absence of this bolt, the witnesses of appellant and appellee widely differed. Those testifying for appellee agreed that in the absence of the bolt from the starting box, the machine could not be properly or safely operated, and that its absence on the occasion of appellee's receiving his injuries caused the starting box to fall from its position and prevent the operator from controlling the movements of the machine, which, by reason thereof, became so violent in its movements and unmanageable, as to cause the injuries to appellee complained of. In other words, appellee's evidence conduced to show that the condition of the starting box constituted a defect in the machine which rendered its use not only unsafe, but actually and imminently dangerous. On the other hand, practically all the evidence introduced in appellant's behalf conduced to show that the condition of the starting box did not make the machine defective in any particular, and that the movements of the machine could be as freely and safely controlled by the starting box without the bolt as with it. In addition, its evidence further conduced to show that appellee was guilty of negligence in requiring his brother to attempt to move the machine by its own power or by "kicking it over" with electricity, instead of moving it with the pinch bar; that the moving of the machine with the pinch bar is the customary and the only safe way of moving it; that appellant did not allow the machine to be moved as was attempted by appellee and his brother, because of the danger attending it, and that its rule was to require the machine to be moved by the use of the pinch bar alone; that this rule was known to its employees generally and had been communicated to appellee when he began work as a helper at this machine. Appellee and his witnesses denied the existence of any such rule and all knowledge on their part of it.

In view of what has been said of the evidence, it is patent that appellant was not entitled to the peremptory

instruction asked by it. We are, however, of opinion that appellant's complaint of the trial court's failure to submit to the jury its ground of defense contained in the refused instruction marked "A," offered by it, is well founded. The instruction was inaptly expressed, but substantially correct, and it was the duty of the court to give it in the following words:

"If the jury believe from the evidence that at the time of receiving his injuries the plaintiff and Isaac Meeks, at the plaintiff's instigation, were attempting to move the cutting machine by means of its own electric power and a short iron pipe, and that such method of moving it was forbidden by a rule of the defendant then in force, and known to plaintiff to be in force; and shall further believe from the evidence that he would not have been injured, but for such method of moving it, the law is for the defendant and the jury should so find."

Such an instruction, together with that on contributory negligence, which was correctly defined by the court, would have given the jury all the law with respect to the two grounds of defense mainly relied on by appellant and in support of which much of the evidence introduced in its behalf was directed; and as the evidence in appellee's behalf tended to refute these grounds of defense, the jury in passing upon the evidence of both would have been more properly guided by the additional instruction in reaching a verdict.

Instruction No. 3, given by the court and objected to by the appellant, contains one error, in that it advised the jury, in substance, that in order to entitle appellee to recover, they must believe from the evidence that the defect, which, as alleged, rendered the cutting machine dangerous for use and thereby caused his injury, was unknown to the appellee and could not, by the exercise of ordinary care, have been known to him. This is not the law. As stated in a preceding part of this instruction, it was the duty of appellant to use ordinary care to provide appellee with a machine that was reasonably safe for use by him; but, under the law and according to the evidence, the latter was under no duty to inspect the machine for the purpose of ascertaining whether it was reasonably safe for the use he was required to make of it. If, however, the defect in the machine was so obvious as that one of ordinary intelligence and judgment, situated as he was, could, before receiving his injuries, by the exercise of ordinary care have discovered

the defect and that the machine, by reason thereof, was not reasonably safe for the use to which he put it, he would not be entitled to recover for his injuries.

Appellant was in no sense prejudiced by the error in Instruction 3, referred to. On the contrary it made the instruction unduly favorable to it, as, in the particular mentioned, it imposed upon the appellee a greater degree of care than the law requires. For this reason the error affords no ground for a reversal; but as the judgment must be reversed because of the failure of the circuit court to give, with the changes indicated in the opinion, instruction "A" offered by appellant, we have pointed out the defect in instruction No. 3 in order that the court may, upon the retrial of the case, correct it in the manner directed by the opinion.

Instruction "B," offered by the appellant, was properly refused by the court, for it in substance told the jury that as Isaac Meeks, the operator of the machine, was a fellow servant of appellee, they should find for appellant if they believed from the evidence that appellee's injuries were caused by the negligence of Isaac Meeks.

Where an injury is sustained by a servant as the result of the master's negligence in failing to provide him a reasonably safe place to work, or reasonably safe machinery or tools with which to perform his work, although such negligence would not have caused the injury but for the intervening negligent act of another employe of the master in the same field of service with the injured employe, the fellow servant doctrine cannot be invoked by the master to escape liability for such injury; as in such case the negligence of the fellow servant will be treated as combining with that of the master in causing the injury, or he will be regarded as the vice-principal of the master and his negligence imputed to the master; and in either case the primary negligence of the master in failing to provide the injured servant a reasonably safe place to work or reasonably safe machinery and tools with which to work, will be regarded as the proximate cause of the injury. Angel v. Jellico Coal Mining Co., 115 Ky., 728; Van Dyke v. Mem. N. O. & C. Pkt. Co., 24 R., 1283; Trade Water Coal Co. v. Johnson, 24 R., 1777; L. & N. R. Co. v. Hawkins, 21 R., 354; L. & N. R. Co. v. Cox, 145 Ky., 716. And it may further be said, that where the negligence of the master in failing to provide the servant with a reasonably safe place to

work or reasonably safe machinery or tools with which to perform the work, is the proximate cause of an injury sustained by the servant, the latter will not be held to have assumed any risk that would not, by the use of ordinary care, have been obvious to a person of ordinary intelligence in a like situation.

As the judgment must be reversed for the reasons already indicated, it is unnecessary for us to pass upon the complaint of appellant that the amount of damages allowed appellee is excessive.

Judgment reversed and cause remanded for a new trial consistent with the opinion.