## Consolidation Coal Company v. Music.

(Decided November 14, 1916.)

### Appeal from Johnson Circuit Court.

1. Master and Servant—Mines and Minerals—Inspection of Mine Roof. —Where the evidence is conflicting as to the duty of an employe in a mine engaged in operating a coal cutting machine to inspect and test the roof under which he is required to work, before beginning to work, the question is one of fact for the jury.

2. Appeal and Error—Instructions.—Though one of a series of instructions is not properly qualified by reference to the others, the judgment will not be reversed therefor where the jury could not have been misled considering all of the instructions together.

FOGG & KIRK and O'REAR & WILLIAMS for appellant.

J. F. BAILEY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This action was instituted by appellee to recover damages against the appellant company for injuries received from slate falling from the roof upon him while working as a machine operator in a coal mine. Two men were required to operate the machine, and John Perkey, a brother-in-law of appellee, was engaged with him in its operation. Their duties required them to cut excavations across the face of the coal near the floor of the different rooms in the mine. After they had thus cut the coal in a particular room, they were followed by "loaders," whose duty it was to shoot down the coal by blasts, load it into cars, remove it from the mine and prepare the room by propping the roof with timbers to within about fourteen feet of the face of the coal, to examine and test that portion of the roof not propped with timbers and to take down any loose slate found there in order that the room might be made a reasonably safe place for the machine men to make another cutting. When a room had thus been prepared by the loaders, they would inform the machine men that the room was ready for another cutting in the face of the coal, who would, as soon as they had completed their work in other rooms, re-enter the room thus prepared for them, and with the machine make another excavation in the face of the coal.

Appellee was an experienced machine man and had been engaged in this kind of work about three years and a half when the accident complained of here happened. Before entering the room in which the accident occurred, appellee had been informed by Jesse Howell, one of the loaders who had prepared the room for the machine men, that the room was ready for them. In about fifteen or twenty minutes after being thus informed, appellee went in advance of his companion Perkey and made a casual inspection of the room, from which inspection he testified that he saw that the room had been propped to within the proper distance of the face of the coal, and that he did not discover from the inspection made by him any dangerous condition in the unpropped portion of the roof; that it was impracticable to prop the roof nearer than fourteen feet to the face of the coal, because if props had been placed nearer to the face of the coal than was done, they would have interfered with the operation of the machine; that Perkey then came with the

machine, set it, and they had made three cuts of forty-two inches each and started on the fourth when a large slab of slate fell from the roof, striking and seriously injuring him; that he made no test of the roof or any examination other than the one made when he first entered the room; that the defect in the condition of the roof was not obvious and that he did not know of same; that the most efficacious method of inspecting the roof was to have tested it by striking it with a pick or other like instrument. Appellee's testimony with reference to the above facts is not contradicted, unless the testimony of Howell in reference to the defective condition of the roof may be said to be contradictory.

The principal controversy in this action is about what duty of inspection was incumbent upon appellee upon entrance into a room for the purpose of making an excavation with the machine after he had been informed that the room was ready for such work. Appellee testified and contends that his only duty was to make a casual observation to see if anything was wrong; that he was under no duty to make any tests for the purpose of discovering any defect that was not obvious. It is the contention of appellant that it was appellee's duty before beginning work in the room to make an examination thereof, including proper tests, in order to satisfy himself that the room was a reasonably safe place in which to do his work before undertaking to do same. Both sides of this controversy are supported by testimony.

That it was the duty of appellant to furnish appellee a reasonably safe place in which to do his work, having due regard for the character of that work, is conceded, and that upon the loaders was imposed the duty of preparing the room so that it would be reasonably safe in which to work by the machine man, is supported by a preponderance, if not all, of the evidence, and that in this case this work was not properly performed by the loaders is conclusively established by the evidence of Jesse Howell, who testified that when he notified appellee that the room was ready for him he knew a portion of the unsupported roof under which appellee would have to work was not reasonably safe, but that a portion of that part of the roof was loose and ought to come down, and that being unable to take it down himself, it was his duty to have informed the mine boss or some one.

else in authority of the fact so that it might be remedied before appellee was informed that the room was ready for him, and that it was his intention so to do but that he forgot to do it, and unthoughtfully informed appellee that the room was ready for him. That this is negligence with which appellant is chargeable there is no room for doubt, because Howell was not a fellow servant of appellee, but was an employee in a different department upon which rested the duty of making reasonably safe the place in which appellee was required to work. Williams Coal Co. v. Cooper, 138 Ky. 287. The responsibility for this negligence upon the part of an employee in a different department could have been avoided by appellant, unless the danger was obvious, only if the duty rested upon appellee of inspecting and testing the roof before beginning his work, and to ascertain for himself whether or not in fact it had been made safe by the employee whose duty it was to make it safe. That such was his duty is the earnest contention of counsel for appellant. The further contention is made that the defect in the roof is shown by the evidence to have been obvious and such as forbade appellee to work under it without necessarily assuming the risk; and contending that the evidence conclusively shows that such defect was so obvious that by the exercise of ordinary care appellee could and should have discovered it by even the casual inspection, such as he admits it was his duty to make, counsel for appellant urgently insist that their motion for a peremptory instruction should have been sustained.

Manifestly if the contention of appellant, that the defective condition of the roof was so obvious that it could have been discovered by appellee under such inspection as he testified it was his duty to make, had been clearly established by the evidence, the motion for a peremptory should have been sustained, but upon this point appellee testified that this condition was not obvious or discoverable under such an inspection as he was required to make, while Jesse Howell testified that the condition could have been discovered by a close inspection with the eye, but that it was not so obvious as to have been readily seen by such an inspection. No other witness testified about the condition of the roof at the time when appellee entered the room. There were eighteen witnesses in all introduced, but the testimony

of the other witnesses was directed to the extent of the duty of a machine runner, such as appellee was, to inspect a room before beginning work, and the extent of appellee's injuries, so that it will be seen that the only two issues about which there was any real contention in this action were the extent of appellee's duty to inspect, and whether or not the dangerous condition of the roof was so obvious that in the exercise of ordinary care he ought to have discovered that condition under any inspection. Upon both of these questions the evidence is contradictory, and upon each issue there was a sufficiency of evidence in support of appellee's contention to necessitate a submission to the jury, and appellant was not entitled to a peremptory instruction.

Both of these questions were submitted to the jury by the instructions given by the court, and the jury returned a verdict in favor of appellee in the sum of $1,000.00, ten of the jurors agreeing to and signing the verdict.

The only other ground upon which appellant relies for reversal is that the court improperly instructed the jury. Seven instructions were given. By the first, the jury were authorized to find for the appellee if, from the evidence, they believed it was appellant's duty to look after the safety of the place and failed to make it reasonably safe, and the appellant knew or could have known by the exercise of ordinary care, and plaintiff did not know that the roof was unsafe. By the second instruction the measure of damage was defined. By the third instruction the jury were instructed if they believed from the evidence under the customs and rules of the company to examine and inspect the roof of the mine appellee failed to make such tests as were usual and customary among miners for that purpose, and that such test would have disclosed the danger, they should find for the defendant. By instruction four the jury were told that if they should believe that it was not plaintiff's duty to test and inspect the roof as set out in instruction three, but it was his duty only to inspect with the eye by looking, and should further believe from the evidence that the slate in the roof was loose, and this fact was known to appellee, or could have been discovered by him by such an inspection, they were to find for the defendant. By instruction number five the jury were told that if they should believe from the evidence

that it was plaintiff's duty to look to the safety of his working place where he was injured while engaged at work, they should find for the defendant, although they might believe the slate was loose and that the company's loader knew it before the plaintiff went under it to cut the coal, and did not tell plaintiff it was loose. Instruction number six defined negligence and ordinary care, and instruction number seven authorized a verdict by nine or more of the jury.

Appellant objected to the giving of instructions Nos. 1, 2, 3, 4 and 5.

The objection to instruction number one is that it was misleading in submitting to the jury the question of the master's duty to furnish appellee with a reasonably safe place in which to work, since the evidence all showed that the roof was in a dangerous condition, of which the loader knew. In our judgment this question was properly submitted to the jury under the circumstances here, because it was contended throughout the trial by appellant that it was not its duty to render the place reasonably safe finally except through appellee himself, and this contention raised the question whether, under the circumstances, it was appellant's or appellee's duty to make the place safe; but even if we should admit the contention that counsel for appellant makes in brief that it was unquestionably appellee's duty to make the place safe independent of appellant, the submission of that question to the jury certainly was not prejudicial to appellant.

The second instruction is objected to upon the ground that it authorized the jury to assess damages as therein defined, if appellant negligently failed to do its duty in furnishing appellee a reasonably safe place in which to work without proper qualification; that this instruction stands out as a simple and sole guide to a verdict.

No doubt this instruction would have been in better form had it been qualified by a reference to the other instructions, or better still if it had been confined to defining the measure of damages, but since both parties' theories of the case were presented in separate instructions and the jury necessarily understood they could not find under one if they believed the theory presented by another instruction, we cannot think the jury were misled or the appellant prejudiced by this instruction. This court has frequently refused to reverse for this cause

where the instructions considered as a whole fairly presented the theories of both parties. See Johnson v. Peak, 50 S. W. 682; City of Louisville v. McGill, 52 S. W. 1053; C. & O. Ry. Co. v. Grigsby, 131 Ky. 363; Louisville Water Co. v. Williams, 140 Ky. 320.

The objection made to instruction number three is that it fixes the plaintiff's duty of inspection under the customs and rules of the company and that it authorized a finding for defendant if he failed to make such test "as is usual and customary among miners;" that the instruction is vicious because it allows the master to establish rules or even customs for inspection, but that it allows the men to disregard these rules and customs and to substitute in their stead a different rule or custom, namely: "that which is usual and customary among miners." This criticism is more technical than substantial, in our judgment, because the instruction does not suggest that any particular duty of inspection was established by the customs or rules of the company, but tells the jury only that if they should find from the evidence under the customs and rules of the company it was the duty of appellee to make any inspection, and he failed to make such tests as are usual and customary among miners, that they should find for the defendant. No particular rule or custom having been specified, but only a duty of inspection, such duty would have been performed by an observance of the usual and customary rule among miners, and the instruction does not seem to us to be erroneous, certainly not prejudicially so.

It is asserted that instruction number four is based upon appellee's own testimony as to what he regarded his duty to be, that is, his interpretation of such admitted duty to inspect, and that if there was imposed a duty of inspection it was not discharged by appellee's misinterpretation of it. While it can, of course, be said that appellee's testimony of what his duty was is only his own interpretation of the duty imposed, yet it is nevertheless true that appellee testified what was in fact his duty as imposed and recognized by the company, and in this he is corroborated by other witnesses, although it is in the testimony of some of the witnesses that his duty to inspect imposed the duty to test as well as to look, of which testimony it might equally as well be said it was but the witness's interpretation of the duty imposed. The instruction does not make appellee in-

terpreter of the duty of inspection, but it does submit to the jury his theory of what his duty in reality was, and this was proper.

Instruction number five submitted to the jury appellant's theory of this duty, and the two theories being supported by evidence, it was the duty of the court, of course, to submit both theories, and we find no objection to the way in which it was done.

Appellant also complains that the court gave no instruction upon the question of assumed risk, although it was pleaded and relied upon by appellant; but it is apparent that assumed risk had no place in the instructions here, because if it was the duty of appellant to have rendered the place safe for appellee in which to work and it negligently failed to do so, he did not assume any risk consequent thereto, Williams Coal Co. v. Cooper, *supra;* and besides appellant offered no instruction upon that question. The only instruction offered by appellant which it urges should have been given is entirely covered by instruction number five, which was given.

Many authorities are cited for appellant but none of them, in our opinion, are applicable to the facts of this case. Counsel for appellant assume throughout their brief that it was appellee's duty not only to make a visual inspection as he did, but that it was his duty to have tested the roof by sounding it with a pick or other instrument, which is unquestionably a more efficacious method of inspection; but as we have heretofore pointed out the extent of inspection required of him under the customs and rules of the company was the vital question in issue. If it had been appellee's duty to make such inspection as counsel for appellant contend it was, the cases cited would have been applicable and would have sustained appellant's contention, but the question of whether or not appellee's duty of inspection was such as counsel for appellant contend it was, being in issue, was properly submitted to the jury.

In the case of Eagle Coal Co. v. Patrick's Admr., 161 Ky. 333, this court said:

"The evidence as to whose duty it was to inspect the roof of the place where Patrick was at work was conflicting and because conflicting it was for the jury, and it was error to instruct the jury as a matter of law that such duty devolved upon the coal company."

To the same effect are Buey v. Chess, 84 S. W. 563; Old Diamond Coal Co. v. Denny, 160 Ky. 554; Borderland Coal Co. v. Small, 160 Ky. 739; Duncan Coal Co. v. Thompson's Admr., 157 Ky. 304.

Perceiving no error in the trial of this case prejudicial to appellant, the judgment is affirmed.